COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )

                                                                              )              
No.  08-02-00355-CR

                                                                              )

                                                                              )                    Appeal from the

                                                                              )

EX PARTE:  CHARLES EDWARD TURNER     )                 70th District Court

                                                                              )

                                                                              )            
of Ector County, Texas

                                                                              )

                                                                              )                 
(TC# W2540-A)

                                                                              )

 

 

O
P I N I O N

 

Appellant Charles
Edward Turner is charged with murder and his bail was set at $250,000.  Appellant petitioned for a writ of habeas
corpus, complaining of excessive bail and lack of probable cause for his
detention.  The writ issued and after a
hearing, the trial court found probable cause existed to detain Appellant and
that bail was excessive, reducing Appellant=s
bail to $100,000.  On appeal, Appellant
asserts that bail is still unduly excessive and requests that this Court
reverse the trial court=s
order and reduce his bail to $25,000.  We
affirm.

FACTUAL
AND PROCEDURAL BACKGROUND








At the habeas corpus
hearing, State witness Detective Buzzy Abalos of the Odessa Police Department
testified that he was the lead investigator of the homicide, which is the basis
of this prosecution.  According to
Detective Abalos, on July 29, 2002 at about 10:30 p.m., Appellant shot
eighteen-year-old Christopher Blair in the chest during a confrontation between
the two in the parking lot between buildings in the Spanish Oaks Apartments
complex.  The victim died in route to the
hospital.

Detective Abalos
conducted interviews with several witnesses at the scene.  The victim=s
fourteen-year-old brother, Dexter Drennan, told Detective Abalos that he, his
mother, and a family friend went to his brother=s
apartment after receiving a telephone call from Blair and that either Blair or
his mother were concerned that something was going to happen that night.  They were in Blair=s
apartment when Appellant knocked on the door. 
Blair=s brother
witnessed the confrontation between Appellant and Blair and saw Appellant shoot
his brother with a semiautomatic gun. 
Another witness, Daniel Morgan, saw Appellant and Blair arguing outside
the apartment complex and observed Appellant push Blair.  According to this witness, Blair put his arms
up and Appellant shot him one time in the chest.  Mr. Morgan also saw Appellant standing over
Blair=s body
and then heard Appellant say, AI
just killed his ass.@  The police apprehended Appellant in Octavia
Moseley=s
apartment in the complex.  The officers
saw Appellant in the apartment and the female who had opened the door told the
officers that Appellant did not belong in the apartment.  From that information, Detective Abalos
gathered that Appellant was attempting to hide from the police.  Appellant refused to tell the officers where
the gun was, but they were able to locate it in Appellant=s apartment behind one of the doors in
his apartment.








Apparently, there
were two confrontations between Appellant and Blair that day.  Detective Abalos testified that in additional
witness interviews, he learned that sometime prior to the shooting, Blair
allegedly burglarized Appellant=s
apartment and had taken $300.  Witnesses
also told the detective that Blair was doing drugs throughout that day and had
threatened an eleven-year-old girl with a knife.  In the first confrontation, Appellant
confronted Blair about taking the money. 
Blair was armed with a butcher knife and a smaller butterfly knife,
which is an illegal weapon.  After this
initial confrontation, Appellant left the apartment complex with his friend
Marquett Wilburn and went to the house of another friend, J.J. Jones, to get
the gun.  When Appellant came back the
second confrontation occurred, which resulted in Blair=s
death.  At the time of the shooting,
Appellant was twenty-two years old.

Connie Turner,
Appellant=s mother,
testified that her son had lived in Ector County all his life, except for the
year he spent in the Job Corps Program. 
Appellant had attended Permian High School, completing the tenth
grade.  Appellant went into the Job Corps
to try to earn his G.E.D. and obtain job training.  While in the Job Corps, he was living in
Roswell, New Mexico for a little while, before being transferred to McCamey,
Texas.  While attending Job Corps in
McCamey, Appellant worked part-time with his mother=s
uncle cleaning offices in Dallas. 
Appellant left the Job Corps program at age twenty.  Appellant worked for a few months in Dallas
and then decided to return to Odessa, Texas. 
Since returning, Appellant had been looking for full-time regular
employment.  In the meantime, Appellant
had been doing some maintenance work for his apartment complex, cutting yards
to make money, and watching his five-month-old son while his girlfriend, the
baby=s mother,
worked at a daycare center.

Regarding
Appellant=s family
ties in the community, Ms. Turner testified that she lived and worked in
Odessa.  Both sets of Appellant=s grandparents live in Ector
County.  Appellant=s
two brothers still live at home and Appellant has uncles and aunts who live in
Ector County.








Ms. Turner stated
that to her knowledge, Appellant has no assets that can be sold or used as
collateral in raising money for a bond. 
Appellant does not own a vehicle nor any real estate.  Appellant has no stocks or bonds and has
nothing of value to pawn or sell.  Any
ability to make bond would come from his family members.  Ms. Turner works as a correctional officer at
the Civigenics Ector County Correction Center and earns $8.65 per hour, with
net pay of $590 biweekly.  Appellant=s paternal grandparents live on Social
Security and his maternal grandmother works at Medical Center Hospital and
earns about $600 biweekly.  Ms. Turner
did not know how much money Appellant=s
girlfriend earns at the daycare center. 
Assuming that most bonding companies would require a 10 percent bond
fee, Ms. Turner believed that the family could probably raise enough money for
a $25,000 bond.

Before resting,
the State introduced into evidence Appellant=s
two prior convictions for misdemeanor offenses. 
In August 2001, Appellant pled guilty to the offense of interfering with
the public duties of an officer and was sentenced to three days= confinement in the county jail, time
served, and was fined $500.  In March
1998, Appellant pled guilty to the offense of evading arrest or detention and
was sentenced to three days=
confinement in the county jail, time served, and was fined $350.

At the conclusion
of the hearing, the trial court found that the bail was excessive, but
expressed concerned about the possibility of flight and the seriousness of the
crime.  The trial court lowered Appellant=s bail to $100,000.  Appellant now timely appeals the trial court=s order.

DISCUSSION








In his sole issue
for review, Appellant argues that the trial court erred when it reduced bond to
$100,000 on Appellant=s
writ of habeas corpus for bail reduction because it is still excessive and
violates his right to reasonable bail under the Texas constitution.  See Tex.Const.
art. I, ''
11, 13; Tex.Code Crim.Proc.Ann.
arts. 1.07 and 1.09 (Vernon 2003).

BAIL
REDUCTION

The primary
purpose or object of an appearance bond is to secure the presence of the
accused in court for the trial of the offense charged.  Ex parte Rodriguez, 595 S.W.2d 549,
550 (Tex.Crim.App. 1980); Ex parte Vasquez, 558 S.W.2d 477, 479
(Tex.Crim.App. 1977); Ex parte Green, 940 S.W.2d 799, 800‑01
(Tex.App.‑‑El Paso 1997, no pet.). 
Bail should be set in an amount sufficient to give reasonable assurance
that the defendant will appear at trial, yet it should not be used as an
instrument of oppression.  Ex parte
Ivey, 594 S.W.2d 98, 99 (Tex.Crim.App. 1980); Ex parte Vasquez, 558
S.W.2d at 479. 

While there is no
precise standard for reviewing bail determination, Article 17.15 of the Texas
Code of Criminal Procedure serves as a guide. 
Ex parte Pemberton, 577 S.W.2d 266, 267 (Tex.Crim.App.
1979).  Article 17.15 provides:

The amount of bail to be required in any
case is to be regulated by the court, judge, magistrate or officer taking the
bail; they are to be governed in the exercise of this discretion by the
Constitution and by the following rules:

 

(1)        The bail shall be sufficiently high to
give reasonable assurance that the undertaking will be complied with.

 

(2)        The power to require bail is not to be
so used as to make it an instrument of oppression.

 

(3)        The nature of the offense and the
circumstances under which it was committed are to be considered.

 

(4)        The ability to make bail is to be
regarded, and proof may be taken upon this point.

 

(5)        The future safety of a victim of the
alleged offense and the community shall be considered.

 








Tex.Code
Crim.Proc.Ann. art. 17.15 (Vernon Supp. 2003).  Circumstances to be considered in determining
the amount of bail include the following seven factors:  (1) the accused=s
work record; (2) the accused=s
family and community ties; (3) the accused=s
length of residency; (4) the accused=s
prior criminal record, if any; (5) the accused=s
conformity with the conditions of any previous bond; (6) the existence of
outstanding bonds, if any; and (7) aggravating circumstances alleged to have
been involved in the offense the accused is charged with committing.  Ex parte Rubac, 611 S.W.2d 848, 849‑50
(Tex.Crim.App. 1981).

The burden of
proof is on the applicant to prove that the bail set is excessive.  Ex parte Rubac, 611 S.W.2d at 849.  We review the trial court=s ruling for an abuse of
discretion.  Id. at 850.

The primary
factors to be considered in determining what constitutes reasonable bail are
the punishment that can be imposed and the nature of the offense.  Ex parte Rubac, 611 S.W.2d at 849; Ex
parte Rodriguez, 595 S.W.2d at 550. 
In the present case, the offense charged is murder, a first-degree
felony.  Tex.Pen.Code Ann. '
19.02 (Vernon 2003).  If convicted,
Appellant potentially faces up to ninety-nine years of imprisonment.  See Tex.Pen.Code
Ann. ' 12.32
(Vernon 2003).  Although the complete
facts of the case were not presented at the habeas corpus hearing, there was
evidence that the State had probable cause to detain Appellant for the offense.  








Considerations
such as family ties, residency, work history, prior criminal record, and
adherence to prior bonds are designed to gauge the defendant=s flight risk potential.  Ex parte Hulin, 31 S.W.3d 754, 761
(Tex.App.‑‑Houston [1st Dist.] 2000, no pet.).  Here, the evidence indicates that Appellant
has family ties in the local community. 
Although Appellant has lived in Ector County most of his life, he had
recently lived out-of-state and then in the Dallas area for at least some
months.  There is no evidence that
Appellant has had regular long-term employment in Ector County, but rather,
prior to his arrest, Appellant was underemployed.  While Appellant does not have a serious
criminal record, one of his prior convictions was for evading arrest or detention
by a police officer.  Further, Detective
Abalos=
testimony suggested that Appellant had left the immediate scene of the crime
and may have been hiding from the police prior to his apprehension.  This evidence is some indication that
Appellant may pose a flight risk.

With regard to
Appellant=s ability
to make bail, Appellant=s
mother testified that Appellant has no savings, real estate, or assets to sell
or pawn in order to raise money for bail. 
Ms. Turner=s
testimony clearly indicates that Appellant=s
family has limited financial resources to raise the money for a $25,000 bond,
let alone bail at $100,000.  However, if
Appellant fails to appear at trial, his family=s
assets and savings are at risk, not his own, which may provide little or no
incentive for him to appear.  Although the
ability to make bail is a factor to be considered, ability alone, does not
control in determining the amount of bail. 
Ex parte Gentry, 615 S.W.2d 228, 231 (Tex.Crim.App. 1981); Ex
parte Charlesworth, 600 S.W.2d 316, 317 (Tex.Crim.App. 1980).

The State presented
no evidence with respect to any physical threat that Appellant might pose to
any particular individual or to the community. 
In fact, on cross-examination, Detective Abalos conceded that no other
members of the apartment complex community were threatened or have any fears
about what might happen to them if Appellant is let out of jail.  Further, Detective Abalos conceded that
Appellant did not have a serious criminal history prior to his arrest.








The evidence shows
that Appellant has lived most of his life in Ector County and has many family
members who reside there.  Appellant has
no assets and his family has limited financial resources to post bond.  There is no evidence that Appellant poses a
threat to the community=s
safety.  However, in balancing these
factors against evidence that suggests potential flight risk and the nature and
circumstances of the offense, we cannot conclude that the trial court abused
its discretion in lowering the bond to $100,000.  Although the bail amount is high, Appellant
has failed to demonstrate that the bail set is excessive.  We overrule Appellant=s
sole issue for review.

For the reasons
stated above, we affirm the trial court=s
order.

 

 

June
27, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 5

McClure, J., Chew, J., and Preslar, C.J. (Ret.)

Preslar, C.J. (Ret.)(Sitting by Assignment)

 

(Do Not Publish)