11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Ex parte Victor M. Cuevas, Jr.

No. 11-03-00402-CR -- Appeal from Gaines County

 

This is an appeal from the trial court=s order denying Victor M. Cuevas, Jr.=s motion to reduce bail bond.  TEX.R.APP.P. 31.  We affirm.

                                                            Procedural
Background

In May 2003, Cuevas was indicted for engaging in
organized criminal activity to commit theft. 
Bail was set at $1,000,000, and Cuevas filed a motion to reduce the bail
to $10,000.  After a hearing, the trial
court denied the motion on July 17, 2003; and Cuevas appealed.  The El Paso Court of Appeals reversed and
remanded for the trial court to consider the factors listed in TEX. CODE CRIM.
PRO. ANN. art. 17.15 (Vernon Supp. 2004). 
Ex parte Victor M. Cuevas, Jr., ___ S.W.3d
___, 2003 WL 22461883 (No. 08-03-00311-CR, Tex.App. -
El Paso, October 30, 2003, no pet=n).

On November 13, 2003, the trial court conducted
another hearing pursuant to the El Paso Court of Appeals=s
opinion.  Cuevas asked the trial court to
reduce the bail to $50,000.  The trial
court denied the motion, and Cuevas perfected this appeal.[1]  We affirm.

                                                                  Issue
on Appeal

In his sole issue on appeal, Cuevas contends that
the trial court abused its discretion by failing to reduce his bail.  Cuevas argues that, under the factors listed
in Article 17.15, the $1,000,000 bond is excessive.  Cuevas also contends that the trial court
should have taken into account other considerations such as his work record,
his family and community ties to Gaines County, his length of residency, his
prior criminal history, his conformity with previous bail bond restrictions,
the existence of any outstanding bail bond, and any aggravating circumstances
in the alleged offense.

                                                                  Applicable
Law

Article 17.15 provides that the trial court
properly exercises its discretion by setting bail in accordance with the Texas
Constitution and the following rules:

1.  The bail
shall be sufficiently high to give reasonable assurance that the undertaking
will be complied with.

 

2.  The
power to require bail is not to be so used as to make it an instrument of
oppression.

 

3.  The
nature of the offense and the circumstances under which it was committed are to
be considered.

 

4.  The
ability to make bail is to be regarded, and proof may be taken upon this point.

 

5.  The
future safety of a victim of the alleged offense and the community shall be
considered.

 

In addition to the rules listed in Article 17.15, the following
factors are also considered:  the nature
of the alleged offense; the circumstances under which the alleged offense was
committed; possible punishment; the defendant=s
work record; the defendant=s
ties to the community; the defendant=s
length of residency; the defendant=s
prior criminal record; the defendant=s
conformity with any prior bail bond conditions; the defendant=s ability or inability to make a bail
bond; and the existence of any outstanding bail bonds.  Ex parte Charlesworth, 600 S.W.2d 316, 317 (Tex.Cr.App.1980); Ex
parte Rodriguez, 595 S.W.2d 549, 550
(Tex.Cr.App.1980); Ex parte Ivey, 594 S.W.2d
98 (Tex.Cr.App.1980); Ex parte Vasquez, 558
S.W.2d 477, 479 (Tex.Cr.App.1977); Ex parte
Simpson, 77 S.W.3d 894, 898 (Tex.App. - Tyler
2002, no pet=n); DePena v. State, 56 S.W.3d 926, 927 (Tex.App. - Corpus Christi 2001, no pet=n); Brown v. State, 11 S.W.3d
501 (Tex.App. - Houston [14th Dist.] no pet=n); see also Ex parte
Rubac, 611 S.W.2d 848, 849
(Tex.Cr.App.1981).  The ability to make
bond is one of many factors to be considered; however, it does not control the
amount of the bail bond and will not automatically render an amount excessive.  Ex parte Charlesworth, supra; Ex parte
Rodriguez, supra; Ex parte Ivey, supra; Ex
parte Vasquez, supra; Ex parte
Simpson, supra; DePena v. State, supra.  








The primary purpose of the bail bond is to secure
the defendant=s
presence in court.  Ex parte Rodriguez, supra; Ex parte
Ivey, supra; Ex parte Vasquez, supra; DePena v. State, supra; Brown v. State, supra.  The defendant has the burden to prove that
the amount of the bail bond is excessive. 
Ex parte Charlesworth,
supra; Ex parte Rodriguez, supra; Ex parte Vasquez, supra; Ex parte
Simpson, supra; DePena v. State, supra; Brown v.
State, supra; see also Ex parte Rubac,
supra. 

                                                                Background
Facts

According to the U.S. Department of Justice Drug
Enforcement Administration Report admitted into evidence,  Cuevas and Anna Jorgenson (his common-law
wife) were arrested on June 24, 2002, in Oklahoma City as the result of an
ongoing narcotics investigation.  Cuevas
had over $700,000 in his possession at the time.

Cuevas told the officers that he lived in El
Paso.  Cuevas said that he was
self-employed in the tractor business and that he had sold a tractor and a
baler to a man he knew only as APelon.@
Cuevas told the officers that he had sold $100,000 farm tractors and implements
to people whom he only knew by a nickname.

Cuevas had come to Oklahoma City because Pelon was late on his payments.  When Cuevas had called him, Pelon told Cuevas that he had sold the tractor and baler.  Cuevas further told the officers that an Aunknown female@
had then telephoned him and told him to take a Ford Expedition to sell.  Cuevas did not have a receipt for his sale to
Pelon and did not know Pelon=s address or phone number.

Jorgenson told the officers that they had driven
to Oklahoma City to repossess a car. 
After they located the Ford Expedition, Jorgenson said that they went to
eat at Hooters, went shopping at Penn Square Mall, and then returned to the
Ford Expedition.  Jorgenson identified a
Ford F-150 pickup as the vehicle that they had driven to Oklahoma City.

At this time, Cuevas had in his possession the
keys to both the Ford Expedition and the Ford F-150 pickup.  Both Jorgenson and Cuevas consented to the
search of the vehicles.  A duffle bag
containing at least $761,385 was found in the cab of the Ford F-150 pickup.








Cuevas had been very calm and had not paid much
attention to the officers until the officers approached the pickup.  Cuevas then became nervous.  He interrupted the officers by asking for a
cigarette and tried to distract them by asking if he could call his
ex-wife.  When the officer who found the
money called in his discovery, Cuevas  A[a]lmost
simultaneously@ Aturned around, leaned over the marked
police unit, and put his hands behind his back@
in an arrest position.  Cuevas did this Aon his own free will@ and was not directed to assume an
arrest position.

The Oklahoma City Methamphetamine Task Force
agents arrested Cuevas and Jorgenson.  In
an 18-count document, a total of 28 people including Cuevas and Jorgenson were
charged with conspiracy to traffic controlled substances, conspiracy to
transport proceeds from the unlawful sale of controlled substances, and
possession of proceeds from such sales.

Less than nine months after the Oklahoma incident
in March 2003, Billy Joe LaRue was asked to move some
farm equipment from Gaines County to El Paso. 
LaRue was taken to a location west of Seminole
at about 10:00 or 11:00 p.m. and was told to turn the lights off on his
vehicle. Cuevas drove up in a John Deere tractor.  When Cuevas opened the door, LaRue could tell that the tractor was brand new.  Cuevas Aran
dark@ until he
turned the tractor=s lights
on just long enough to tell where the trailer was and then drove the tractor
onto the trailer.

Cuevas called LaRue
several times on a cell phone during LaRue=s trip to El Paso.  Cuevas arranged to meet LaRue
for breakfast at a restaurant in Tornillo, outside of
El Paso.  Afterwards, Cuevas unloaded the
tractor from the trailer.

About a month later on April 5, 2003, LaRue was contacted at 10:30 p.m. about moving another
tractor from Gaines County to El Paso. 
Cuevas again called him on a cell phone during the trip and again unloaded
the tractor.  Cuevas was driving a new
dark red Ford Mustang at this time. 
Before LaRue left to return to Gaines County,
Cuevas told him that Athis
was easy money@ and that
Athe farmer was not going to report this
tractor stolen for two weeks.@

Gaines County Sheriff Jon Key testified concerning
several tractors that had been stolen in Gaines County from December 2001 to
April 2003, including a new John Deere tractor in March 2003 and an Arco
tractor in April 2003.  U.S. Department
of Justice Immigration and Naturalization Service Senior Patrol Agent Paul W.
Farmer gave a statement concerning two John Deere tractors he had seen being
driven across the Rio Grande River into Mexico. 
Photographs of the area where the tractors had been driven into Mexico
were admitted at the hearing.








In this case, Cuevas is indicted for engaging in
organized criminal activity with respect to the March 2003 theft of the new
John Deere tractor and for the March 2003 theft of the John Deere tractor.  The dealer from whom the tractor was stolen
stated that he paid $146,481.38 for the tractor and that he would normally mark
up that type of tractor Aabout
$3,000.00.@

                                                                Cuevas=s Evidence

 At the
second hearing on November 13, 2003, Cuevas offered the record from the first
hearing on June 19, 2003, as his Exhibit No. 1. 
At the first hearing, Maribel Rodriguez
testified that Cuevas was her brother.  Maribel stated that she lived in Odessa and that Cuevas
lived in El Paso.  Their grandmother
lived in Mexico, and their father=s
sister lived in Juarez, Mexico.  Their
father and three of their sisters lived in Seminole.  Another sister lived in Odessa, and a brother
lived in El Paso.  At this time,
Jorgenson was living with Maribel and was expecting
Cuevas=s baby in
six months.  Both Maribel
and Cuevas were born in Juarez and were naturalized citizens of the United
States.

 Maribel stated that their father owned land and rent houses
in Gaines County.  The total value of
their father=s real
estate was $200,000.  After talking with
bail bondsmen, Maribel felt that the family could
make a $50,000 bond.

On cross-examination, Maribel
stated that she could not remember whom she talked to at Judy=s Bail Bond in Odessa and that they did
not tell her how much money they would need. 
She was aware that her brother was facing charges in Oklahoma City but
was not aware that he and Jorgenson had had over three quarters of a million
dollars in their possession when they were arrested.

 Maribel stated that she did not know who Cuevas worked for
and that she had not seen him in awhile. 
She usually stayed in touch with Cuevas through their mother, and she
did not know how often he went to Mexico. 
Maribel was uncertain what vehicles Cuevas
drove or owned.

At the second hearing, Claudia Cuevas testified
that Cuevas was her brother, that she lived in Seminole, and that she worked as
a legal assistant for an attorney in Seminole. 
Claudia stated that she had contacted Ace Bonding in Odessa, Amigo=s Bail Bond  in Odessa, Midland Bail Bond, Easy Terms Bail
Bond of Midland, Triple A Bail Bond, and Lynn Cook Bail Bond of Lubbock.  Not one of these companies was willing to
post a $1,000,000 bail bond.  Claudia was
told that the highest bail bond any of these companies would post was $50,000.  She felt that the family could post a $50,000
bail bond.








Claudia also testified that Jorgenson was due to
have the baby any day and that she was now living in Minnesota.  She stated that, at the time of his arrest,
Cuevas was selling seed and helping their brother with farm equipment.  Cuevas did not own any real estate, had no
bank accounts, no cash that she was aware of, and owned only one vehicle -- a
wrecked Mustang.

Claudia stated that Cuevas was born in Juarez,
Mexico; that he lived in El Paso at the time of his arrest; and that he was a
naturalized citizen.  She did not know if
he traveled back and forth to Mexico, and she did not know why Jorgenson and
Cuevas had been arrested in Oklahoma. 
When asked, Claudia stated:  AI don=t
get into his business.@

After Claudia=s
testimony, Cuevas rested.

Article 17.15 Considerations

Cuevas is charged with acting in an organized
manner with others to deprive the owner of farm equipment worth in excess of
$150,000.   The record shows that Cuevas
may have been involved in organized criminal activity between 2001 and 2003
possibly involving thefts from the same owner as well as from others, including
the owner=s brother
who was also a farm implement dealer. 
The owner had two other dealerships, one of which was located in Tornillo near El Paso. Cuevas had used the owner=s loading docks at the Tornillo facility to unload the stolen tractors. Cuevas=s brother (the same one who lived in El
Paso and the same one Claudia testified that Cuevas had been helping with farm
equipment) had worked for the owner but no longer did.

While Cuevas presented evidence that the bondsmen
his sister contacted were not willing to post a $1,000,000 bond, the record
also shows that Cuevas is accused of being involved in organized criminal
activity that may have existed for two years, that this ongoing activity as
well as the activity in the present case involved traveling across the Mexican
border, that the crossings were not made at a legal checkpoint, that the activity
involved various thefts from people in Seminole and Gaines County, and that the
activity involved more than one theft from the owner of the tractor in this
case.  Cuevas has not established that
the trial court abused its discretion under the requirements of Article 17.15.

                                                              Other
Considerations

Cuevas is charged with the
commission of a first degree felony. 
TEX. PENAL CODE ANN.  ' 71.02 (Vernon 2003 & Supp.
2004).  The range of punishment for this
offense is confinement for life or for a term of not more than 99 years and not
less than 5 years.  TEX. PENAL CODE ANN. ' 12.32 (Vernon 2003).  An optional fine not to exceed $10,000 is
also authorized.  Section 12.32.








The alleged offense was committed in the community
where Cuevas=s father
lived and owned real estate, where Cuevas went to school, where his three
children by his ex-wife lived, and where his sister Claudia lived and
worked.  The offense appears to have
involved not only stealing Cuevas=s
brother=s
employer=s
property but also using his brother=s
employer=s
facilities to commit the offense.       As far as Cuevas=s
history of employment, the record reflects only that Cuevas helped his brother
with farm equipment, that he sold seed, and that he traveled to Oklahoma to
collect a Ford Expedition for payments a man named Pelon
owed him on $100,000 worth of farm equipment. 
Cuevas=s
possession of over $700,000 at the time of the Oklahoma arrest was unexplained.


The record reflects that
Cuevas was born in Juarez, Mexico; that he went to school in Seminole; and that
he was a naturalized United States citizen. 
The record also reflects that Cuevas was known to drive a Ford Mustang,
that he had been seen driving a new dark-colored Ford Mustang near the Mexico
border in connection with the transportation of an allegedly stolen tractor,
that this Ford Mustang had been seen crossing the Mexico border several times,
and that the only vehicle his sister Claudia thought he owned was a Ford
Mustang.

Neither Maribel
nor Claudia (Cuevas=s only
witnesses) were very familiar with Cuevas=s
activities, with his travels to Mexico, or with his work record.  Both Maribel and
Claudia stated that the family was willing to make bond for Cuevas, that their
father owned $200,000 worth of real estate, and that they felt that the family
could make a $50,000 bond.

The present offense was
committed less than nine months after Cuevas was arrested in Oklahoma for
possession of more than $700,000 in proceeds from the sale of controlled
substances.  Cuevas was out on bond on
the Oklahoma charges when he committed and when he was arrested for the present
offense.  Cuevas has not established that
the trial court abused its discretion under these other considerations.

                                                   This
Court=s Holding

Considering the factors
enumerated in Article 17.15, the other factors stated above, and the evidence
Cuevas presented, the record does not support Cuevas=s
contentions that the trial court abused its discretion.  The issue is overruled.

The order of the trial court
is affirmed.

 

W. G. ARNOT, III

March 18, 2004                                                                       CHIEF
JUSTICE

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and 

Wright, J., and McCall, J.











[1]Effective September 1, 2003, appeals from Gaines
County are filed in the Eastland Court of Appeals.  TEX. GOV=T CODE
ANN. ' 22.201 (Vernon 2004).