# CONCURRING OPINION

No. 04-11-00447-CR

**EX PARTE** Mark Anthony **GONZALEZ**

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR5289
Honorable Andrew W. Carruthers, Judge Presiding[1]

Opinion by:      Marialyn Barnard, Justice
Concurring Opinion by:  Rebecca Simmons, Justice

Sitting:      Karen Angelini, Justice
              Rebecca Simmons, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  February 29, 2012

The $1,500,000.00 bail amount in this case is fifty percent higher than any bail amount previously upheld for a single capital murder charge in the State of Texas and twice as high as any amount previously upheld by this court. Nevertheless, I concur in the court's judgment because Gonzalez failed to meet his evidentiary burden to show his bail was excessive. However, because the amount far exceeds amounts we have previously upheld for a single capital murder charge, I feel compelled to caution against imposing exceedingly large bail amounts that violate the Constitution's prohibition against excessive bail.

The pretrial right to a reasonable bond arises from the presumption of innocence and is protected by the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13; TEX. CODE CRIM. PROC. ANN. art. 1.07 (West 2005). In capital cases bail may be denied "when the proof is evident" that the accused committed the offense. TEX. CONST. art. I, § 11; TEX. CODE CRIM.

---

[1] This cause is pending in the 175th Judicial District Court, Bexar County, Texas, in which the Honorable Mary Roman is the presiding judge. However, the hearing on the application for writ of habeas corpus was conducted by the Honorable Andrew W. Carruthers, Criminal Law Magistrate, pursuant to an order of referral.

PROC. ANN. art. 1.07.  In this case, however, the State did not seek to deny bail but sought such a high bail that its constitutionality would be called into question but for Gonzalez's failure to meet his burden to establish his lack of financial resources.  The trial court only has discretion to set a bail amount that is reasonably calculated to give reasonable assurance that Gonzalez will appear for trial.  The limited evidence before the court showed that Gonzalez had a spotty employment history and most recently was working a minimum wage job, a relative believed his family could only afford to pay for a $50,000.00 bond, and Gonzalez had appeared as required for his previous legal proceedings.[2]  Further, the court found he was indigent, presumably in accordance with the procedures set forth in its local rules, yet it set his bail at $1,500,000.00.  Despite this evidence, the majority correctly points out that there was no evidence regarding the value of any vehicles or Gonzalez's home and the trial court could have inferred that Gonzalez was of more substantial means than his cousin—his sole witness at the hearing—represented.

ANALYSIS

Gonzalez is charged with capital murder for the violent murder of a deputy sheriff with whom he had no apparent previous interaction.  Yet even though the crime is heinous, no court may vitiate the Eighth Amendment protections against excessive bail and allow the power to set bail to become an instrument of oppression.  *See* TEX. CODE CRIM. PROC. ANN. art. 17.15.  There is a tension between the desire to retain someone accused of such an egregious crime behind bars and the prohibition against excessive bail.  The question before this court is whether a $1,500,000.00 bail, an amount at least fifty percent higher than any bail amount I have found for a single capital murder charge that has been reviewed and upheld in Texas, violates the Eighth

---

[2] The State introduced evidence of Gonzalez's previous arrests: unlawfully carrying a weapon, attempting to elude a police officer, and DWI (1988); burglary of a vehicle and burglary of vehicle parts (1989); unlawfully carrying a weapon (1992); and possession of a fictitious driver license and driving while license invalid (2000).

Amendment and the Texas Constitution's protections against excessive bail. Because Gonzalez inadequately presented his financial condition, we must uphold the trial court's determination that Gonzalez failed to meet his burden. In other words, the trial court could have inferred that Gonzalez had more resources, and thus did not merit a reduction in bail. Had there been more evidence of Gonzalez's lack of resources, the setting of such a high bail amount would be questionable based on our previous decision in *Estrada*.

   1. *Comparing* Estrada

   The majority distinguishes *Estrada* in part because Estrada only killed the victim after she discovered Estrada burglarizing her home. *See Ex parte Estrada*, Nos. 04-08-00596-CR, 04-08-00597-CR, 04-08-00598-CR, 2008 WL 4958370, at *2 (Tex. App.—San Antonio Nov. 19, 2008, no pet.). But the majority's reasoning that Gonzalez's alleged unprovoked killing of a random sheriff's deputy in his car supports a bail two and one-half times greater than Estrada's—for killing his elderly neighbor in her own home with an arrow through the head—is not persuasive. The key difference between *Estrada* and this case is the evidence of financial resources present in *Estrada* and the lack of financial evidence in this case. A comparison of the facts of both cases reveals little else to support the bail set in this case.

   Estrada was on bond for felony theft when he committed the burglary and murder, and he had been "indict[ed] for two other felonies committed against a family member." *Id.* at *4. According to the evidence, Gonzalez's last arrest was in 2000. Further there is no evidence Gonzalez violated his bond conditions or failed to comply with the requirements of his previous legal proceedings. The victim in this case was shot an overwhelming number of times without apparent provocation, but Estrada shot an elderly neighbor he knew through the head with an arrow. Estrada was considered a possible danger to the community; here the majority repeatedly

emphasizes the random nature of the crime, and implies that a random act poses a risk to the community that justifies a bail amount two and one-half times greater than Estrada's. But the trial court imposed home confinement and electronic bracelet monitoring for Gonzalez as a condition of bond to reduce that risk.

The majority describes other factors in this case that distinguish it from *Estrada*: (1) Gonzalez's connection to a foreign country, (2) Gonzalez's knowledge of other states where he worked, and (3) Gonzalez's failure to have anyone else guarantee his appearance. The foreign connection is limited: Gonzalez's wife was born in Mexico, his mother has a house in Mexico, and Gonzalez had considered applying for a job that would require him to work in Mexico—but he has no passport to travel to Mexico. As far as knowledge of other states, there is no evidence that Gonzalez has any strong connections to other states. His employment records merely reflect he sometimes worked out of state for extended periods, but he always returned to San Antonio. There is no evidence in the record that shows Gonzalez had someone else guarantee his appearance before, and yet he appeared as ordered for his previous proceedings. These facts provide little support for a bail amount of more than two and one-half times greater than that in *Estrada*. Rather, the only distinguishing feature is the evidence relating to financial resources. In *Estrada* both of Estrada's parents had full-time jobs and were willing to help him post bail, and there was evidence that they could pay significant sums to support the bail amount, while Gonzalez's evidence of financial resources was lacking.

*2. Other bail amounts*

A review of other cases also shows the bail amount in this case could be called into question had there been more evidence of Gonzalez's resources.[3] In *Ludwig*, the defendant

---

[3] The majority states that this court "simply appl[ies] the standard of review [and does] not conduct a comparative analysis." But our jurisprudence requires such an analysis to "determine if the trial court acted without reference to

killed two people and had threatened each of them before he killed them. *Ludwig v. State*, 812 S.W.2d 323, 324–25 (Tex. Crim. App. 1991) (plurality opinion) (per curiam). He also threatened to kill his mother-in-law. *Id.* at 325. There was little evidence of the circumstances of his crime before the court, but even considering Ludwig's threat against his mother-in-law, the court reduced his bail to $50,000.00. *See id.*

In *Martinez*, the defendant was charged with killing four people, two under six years of age, by shooting them multiple times. *Martinez v. State*, No. 14-96-01339-CR, 1997 WL 197897, at *3 (Tex. App.—Houston [14th Dist.] Apr. 24, 1997, no pet.) (not designated for publication). He shot one victim six times: three shots were to the back of the victim's head and body. *Id.* The appellate court reversed the trial court's order setting bail at $2,000,000.00, and remanded the case for the trial court to either deny bail or set bail in accordance with the law. *Id.*

In *Simpson*, the defendant was a gang member charged with capital murder for a "brutal, gang-related murder." *Ex parte Simpson*, 77 S.W.3d 894, 897 (Tex. App.—Tyler 2002, no pet.). The court described the circumstances as "a violent, unprovoked killing [that] suggest[s] an appalling lack of concern for human life." *Id.* The court described Simpson as "an individual

---

guiding principles of law." This court has often compared bond amounts in analogous cases in search of constitutional limits—to determine whether the amount set in the instant case was excessive, and therefore whether the trial court abused its discretion. Such cases include *Estrada*, an opinion the majority cites. *See Ex parte Estrada*, Nos. 04-08-00596-CR, 04-08-00597-CR, 04-08-00598-CR, 2008 WL 4958370 (Tex. App.—San Antonio Nov. 19, 2008, no pet.) (comparing bail amounts in analogous cases to determine that the trial court's bail amount was excessive); *e.g.*, *Ex parte Harber*, No. 04-10-00643-CR, 2010 WL 5141509 (Tex. App.—San Antonio Dec. 15, 2010, no pet.) (mem. op., not designated for publication); *Ex parte Wilson*, No. 04-08-00553-CR, 2009 WL 330994 (Tex. App.—San Antonio Feb. 11, 2009, no pet.) (mem. op., not designated for publication); *Ex parte McFarland*, No. 04-03-00154-CR, 2003 WL 21658599 (Tex. App.—San Antonio July 16, 2003, no pet.) (mem. op., not designated for publication). Further, at the bail reduction hearing, defense counsel offered many other bail amount cases for the court to consider; the State did not object to the court comparing the cases.

with a violent and unrepentant nature," and affirmed the trial court's setting of bond at $600,000.00.[4] *Id.* at 895, 897.

### 3. Additional evidence

Finally, as additional evidence to support the bail amount, the majority also cites Gonzalez's "penchant for guns," his wife's "willingness to purchase guns for him," family connections to Mexico, a failed passport application, and an informant's subjective fear of reprisal. But a closer look at the evidence shows its weakness. In Texas, owning four guns can hardly support the inference of future criminal behavior. Absent some legal impediment (that the State has not alleged), the purchase of guns by Gonzalez's wife is of little import. As discussed above, Gonzalez has limited family connections to Mexico, expressed some interest in a job there, and initiated but failed to complete an application for a passport—which he would need for travel to Mexico. Without a passport, with no evidence of any pending employment in any other state, with home confinement and electronic monitoring, and with a history of complying with probation conditions, Gonzalez does not appear to be a significant flight risk. As noted earlier, the limited evidence of Gonzalez's financial status supports the trial court's ruling, but little else does.

### CONCLUSION

The primary purpose of bail is to give a reasonable assurance that the defendant will appear for trial. *See Stack v. Boyle*, 342 U.S. 1, 9 (1951) (Jackson, J., dissenting); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). Even for reprehensible, egregious offenses, if the court does not deny bail, the bail must not be excessive and it must not be used as an instrument of oppression. *See* U.S. CONST. amend. VIII (prohibiting excessive bail); TEX.

---

[4] In a previous appeal of the same matter, the appellate court held a $1,000,000.00 bond was excessive. On remand, the trial court set bail at $600,000.00, and the appellate court affirmed the lesser amount.

CONST. art. I, § 13 (same); TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005) (no oppression); *Eggleston v. State*, 917 S.W.2d 100, 102 (Tex. App.—San Antonio 1996, no pet.) (no oppression).  This court cannot sustain a bail amount "higher than an amount reasonably calculated to [give reasonable assurance]" that the defendant will appear for trial.  *See Stack*, 342 U.S. at 5.  As the majority notes, Gonzalez presented little evidence of his current financial resources, and although he was found indigent for the purposes of appointed representation, the trial court could have determined that Gonzalez did not meet his burden to establish his limited financial resources that would necessitate a reduction in bail.  But because bail in the amount of $1,500,000.00 marks a significant increase over any bail we have ever upheld for a single capital murder charge, I believe a cautionary concurrence is in order.  Therefore, I respectfully concur.

Rebecca Simmons, Justice

PUBLISH