**Ex parte Gilbert VASQUEZ.**

**No. 56242.**

Court of Criminal Appeals of Texas.

Nov. 30, 1977.

Thomas Rocha, Jr., San Antonio, for appellant.

## OPINION

ONION, Presiding Judge.

This appeal is taken from an order entered in a habeas corpus proceeding in the 227th District Court of Bexar County refusing to reduce bail.

The record reflects that on August 3, 1977 the appellant was indicted for capital murder. The said indictment charged that appellant intentionally and knowingly caused the death of Maria Guajardo by shooting her with a gun while in the course of committing and attempting to commit robbery. Bail was set at $100,000.

On August 9, 1977 appellant filed his petition for writ of habeas corpus seeking reduction of bail. A hearing on said petition was held on August 16, 1977, following which the court refused to reduce bail.

The twenty year old petitioner testified that he was in jail, that he was unable to make the amount of bond set, that he did not own any real estate, no stocks or bonds, had no money in the bank and no cash anyplace. He related he had a ten year old automobile, but he gave it to "another lawyer" and that it did not belong to him anymore. He testified he had made a $10,000 bond in an aggravated robbery case,[1] and could possibly make a $10,000 bond in

---

1. The aggravated robbery apparently grew out of the same transaction as the instant case.

the instant case.[2] He told the court he was paying his lawyer $35[3] a week on his fee, and if released could find a job with an uncle at $80 or $85 a week.

Petitioner testified he did not have a pistol inside the grocery store and did not shoot the deceased as alleged. On cross-examination he acknowledged that he drove co-defendant Magdalino Rodriquez to the grocery store, but stated he did not know Rodriquez was going to shoot anyone, that he did not give Rodriquez a gun, and that he did not wait for Rodriquez. He admitted he later saw Rodriquez running several blocks away from the store and inquired as to his running, but Rodriquez "didn't say nothing. He was afraid." Petitioner related that Rodriquez had no gun in his hand and no bag with money in it. He denied splitting the money with Rodriquez. When asked where he and Rodriquez went after he picked up Rodriquez, who had been running, the court sustained the objection to further interrogation by the State.

The State offered no evidence[4] and at the conclusion of the hearing the court refused to reduce bail. In its findings the court found, among other things, that the petitioner had failed to show he is financially unable to make bond in the amount of $100,000. On the same date as the hearing the petitioner filed a pauper's oath for the purposes of obtaining a record on appeal of the habeas corpus proceedings. The court on the same date ordered the transcription furnished without cost, finding petitioner was a pauper.

Article 17.15, Vernon's Ann.C.C.P., provides:

"The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

"1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

"2. The power to require bail is not to be so used as to make it an instrument of oppression.

"3. The nature of the offense and the circumstances under which it was committed are to be considered.

"4. The ability to make bail is to be regarded, and proof may be taken upon this point."

The burden of proof is on petitioner for reduction in bail to show that bail set is excessive. *Ex parte August*, 552 S.W.2d 169 (Tex.Cr.App.1977); *Ex parte Clark*, 537 S.W.2d 40 (Tex.Cr.App.1976); *Holliman v. State*, 485 S.W.2d 912 (Tex.Cr.App.1972).

The primary object or purpose of an appearance bond is to secure the presence of the defendant in court upon the trial of the accusation against him. *Fly v. State*, 550 S.W.2d 684 (Tex.Cr.App.1977); *McConathy v. State*, 528 S.W.2d 594 (Tex.Cr.App.1975). While bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, the power to require bail is not to be used so as to make it an instrument of oppression. See Article 17.15(1) and (2), supra; *Ex parte Kerr*, 549 S.W.2d 6 (Tex.Cr.App. 1977); *Ex parte Clark*, supra.

The evidence was meager, but did show that petitioner's home was in San Antonio and that he had a construction job with an uncle if he were to be released on bail. There was nothing to show that petitioner had a criminal record and no showing as to whether or not petitioner had a past history of failing to appear while on bond.

The nature of the offense was shown to be capital murder (V.T.C.A., Penal

---

2. The record is somewhat confusing on this fact. When asked what kind of bond he, his family or friends could make, petitioner answered:

"A. I think that the same amount I had at first.
"Q. Do you mean another $10,000 or the same—the original $10,000 bond?

"A. The original $10,000."
The witness was then passed.

3. The source of the $35 weekly payments was not revealed.

4. The State has not filed a brief in this cause.

Code, § 19.03), which carries a penalty of life imprisonment or death (V.T.C.A., Penal Code, § 12.31). And when considering the nature of the offense in setting bail, the punishment permitted by law may be considered. *Ex parte Clark*, supra; *Ex parte Bufkin*, 553 S.W.2d 116 (Tex.Cr.App.1977). As to the circumstances under which the offense was committed, there was also little evidence offered. While the return of an indictment establishes probable cause as a matter of law, *Ex parte Branch*, 553 S.W.2d 380 (Tex.Cr.App.1977); *Ex parte Preston*, 533 S.W.2d 820 (Tex.Cr.App.1976); *Ex parte Sellers*, 516 S.W.2d 665 (Tex.Cr.App.1974); *Ex parte White*, 486 S.W.2d 301 (Tex.Cr.App.1972), the only testimony as to the circumstances under which the offense was committed came from the petitioner. He denied his guilt or that he was implicated with Rodriquez, the apparent trigger man in the murder-robbery alleged. He did admit he drove Rodriquez to the grocery store and subsequently picked him up several blocks from the store. He stated he did not know that Rodriquez had a gun or had shot anyone and denied he split the money with Rodriquez. From the evidence offered, it would appear that petitioner's criminal responsibility, if any, would fall under the provisions of V.T.C.A., Penal Code, § 7.01 and § 7.02.

It appears to be undisputed that appellant was indigent,[5] and while he indicated that he might be able to post a $10,000 bond, he did not reveal how he would be able to do so. Appellant's indigency is a circumstance to be considered, but it is not a controlling circumstance nor the sole criterion in determining the amount of bail. *Ex parte Sierra*, 514 S.W.2d 760 (Tex.Cr.App.1974); *Ex parte Runo*, 535 S.W.2d 188 (Tex.Cr.App.1976); *Ex parte Clark*, supra; *Ex parte McClellan*, 545 S.W.2d 483 (Tex.Cr.App.1977); *Ex parte Kerr*, supra.

When appellant's indigency is considered along with the nature of the offense

and the only testimony as to the circumstances under which the offense was committed which was offered, as well as all other testimony introduced, we conclude that the bail of $100,000 was excessive. The power to require bail is not to be used as an instrument of oppression. Article 17.15, supra; *Ex parte Bufkin*, supra. Bail is reduced and set in the sum of $20,000.

It is so ordered.

---

5. While the trial court found that the petitioner had not shown he was financially unable to make a $100,000 bond, appellant's testimony as to his indigency was undisputed. On the same date as the habeas corpus hearing the court, upon petitioner's affidavit, found the petitioner a pauper for the purposes of appeal.