**Lee Scott CLEMONS, Appellant,**

v.

**STATE of Texas, Appellee.**

**Nos. 11–06–00248–CR to 11–06–00251–CR.**

Court of Appeals of Texas, Eastland.

March 22, 2007.

Keith Woodley, Woodley & Dudley, Comanche, for appellant.

Micheal Murray, District Attorney, Perry B. Sims, Asst. Dist. Atty's Office, Brownwood, for state.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

**PER CURIAM.**

These appeals stem from a habeas corpus proceeding in which Lee Scott Clemons urged that his bail was excessive. At the time of the proceeding, Clemons had been arrested and charged with indecency with a child (Cause Nos. 11–06–00248–CR and 11–06–00249–CR) and aggravated sexual assault of a child (Cause Nos. 11–06–00250–CR and 11–06–00251–CR). His bail had been set at $100,000 in each of the indecency cases, at $250,000 in Cause No. 11–06–00250–CR, and at $150,000 in Cause No. 11–06–00251–CR, for a total of $600,000. After a hearing on the habeas corpus petitions, the trial court reduced the amounts of bail to $75,000, $75,000, $150,000, and $100,000—respectively—for a total of $400,000. Clemons appeals, contending in his sole issue in each case that his bail is excessive. We affirm.

In a single issue in each case, Clemons contends that the trial court abused its discretion in setting bail and that the amount of bail is excessive and, therefore, in violation of U.S. CONST. amend. VIII; TEX. CONST. art. I, §§ 11, 13; and TEX.CODE CRIM. PROC. ANN. arts. 1.07, 1.09, 17.15 (Vernon 2005). " 'Bail' is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond." TEX.CODE CRIM. PROC. ANN. art. 17.01 (Vernon 2005). Article 17.15 provides that the amount of bail:

[I]s to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

The ability to make bond is one of many factors to be considered; however, it does not control the amount of bail and will not automatically render an amount excessive. *Ex parte Charlesworth,* 600 S.W.2d 316 (Tex.Crim.App.1980); *Ex parte Branch,* 553 S.W.2d 380, 382 (Tex.Crim.App.1977). If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be eliminated, and the accused would be in the position to determine what his bail should be. *Ex parte Branch,* 553 S.W.2d at 382.

In addition to the rules listed in Article 17.15, the following factors may also be considered: possible punishment, the accused's work record, his ties to the community, the length of his residency, his prior criminal record, his conformity with any prior bail bond conditions, his ability or inability to make a bail bond, and the existence of any outstanding bail bonds. *Ex parte Charlesworth,* 600 S.W.2d at 317; *Ex parte Ivey,* 594 S.W.2d 98 (Tex.Crim. App.1980); *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex.Crim.App.1977); *Ex parte Hunt,* 138 S.W.3d 503 (Tex.App.-Fort Worth 2004, pet. ref'd); *Ex parte Simpson,* 77 S.W.3d 894, 898 (Tex.App.-Tyler 2002, no pet.); *DePena v. State,* 56 S.W.3d 926, 927 (Tex.App.-Corpus Christi 2001, no pet.); *Brown v. State,* 11 S.W.3d 501 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *see also Ex parte Rubac,* 611 S.W.2d 848, 849 (Tex.Crim.App.1981). The primary purpose of the bail bond is to secure the accused's presence in court. *Ex parte Vasquez,* 558 S.W.2d at 479. The accused has the burden to prove that bail is excessive. *Id.*

We review the trial court's ruling on a request to reduce bail under an abuse of discretion standard. *See Ex parte Rubac,* 611 S.W.2d at 850; *see also* Article 17.15 (giving trial court discretion to set amount of bail). As such, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim. App.1991).

Clemons introduced testimony that he was unable to make bond with bail set as high as it was. Clemons and other witnesses testified regarding his lack of funds or assets. The evidence showed that Clemons had $1,900 and a collection of lighters worth about $500. He drove a company-owned vehicle, rented a house, was in debt, and owned no land. Clemons testified that he had not spoken to friends or family to determine whether any of them would be willing or able to contribute money toward a bond. One of the owners of the company that employed Clemons testified that she had talked to a bondsman who charged ten percent but had not discussed any certain dollar amount or limit as far as helping Clemons pay a bond fee. She stated only that she understood the bond had to be something that Clemons could reasonably afford and that she would try to hire a bondsman if bail were set at an amount that Clemons could pay.

The record also shows that Clemons had ties to the community and that he had stable employment prior to his arrest. Clemons grew up in Aspermont. His grandparents still lived there. Clemons and his wife and children lived in Brownwood at the time of the hearing. His

mother also lived in Brownwood. Clemons's employers testified that he was a good, reliable, hard, honest worker and that he had worked at their construction business for six years prior to his arrest. They also testified that they did not believe Clemons was a flight risk and pointed out that he had already had opportunities to flee but had not done so. As part of the duties of his employment, Clemons traveled throughout Texas and occasionally spent the night out of town. On these occasions, Clemons drove either the "haul truck" or a pickup.

Clemons's wife did not dispute his monetary situation, but she testified that Clemons was a flight risk and a danger to himself. Clemons testified that he had made comments about taking his own life but that he was not serious when he made those comments. Clemons later admitted that he had told a family friend that he would kill himself rather than go to prison. Clemons testified that, although he had considered killing himself, he had decided against it. Clemons also admitted that he had made comments to his wife about fleeing the country. Clemons told his wife that they could be a family again if they went to Mexico. Clemons testified that he asked his wife if she, along with their daughters, would be willing to go to Mexico with him. Clemons's wife declined the offer.

Clemons was charged with the aggravated sexual assault of two children: his biological daughters ages six and three. He was also charged with indecency with two children: one of his daughters and a seven-year-old who was the daughter of a family friend. Other than the identity of the victims, the circumstances surrounding the allegations in these cases were not developed at the habeas hearing. However, the serious nature of the alleged offenses is evident from the type of offenses in themselves. Aggravated sexual assault of a child is a first degree felony punishable by imprisonment for life or for a term of five to ninety-nine years. TEX. PEN. CODE ANN. § 12.32 (Vernon 2003), § 22.021(e) (Vernon Supp.2006). Indecency with a child as charged against Clemons is a third degree felony punishable by a term of imprisonment between two and ten years. TEX. PEN.CODE ANN. §§ 12.34, 21.11 (Vernon 2003). Any sentences Clemons might receive in these cases could potentially be ordered to run consecutively. TEX. PEN.CODE ANN. § 3.03(b)(2) (Vernon Supp.2006). Thus, the potential exists for a very lengthy sentence.

Although Clemons showed that he could not afford bail as set in these cases, he did not provide any evidence showing that he had made any efforts to secure a bond himself. His testimony showed that he had not attempted to find out if any friends or family members were willing or able to help him secure a bond. We hold that the trial court did not act arbitrarily or unreasonably in setting bail in light of Clemons's failure to show any effort on his part to secure a bond, the serious nature of the alleged crimes, the potential for a lengthy sentence, the future safety of the victims (based upon Clemons's expressed desire to flee with his wife and daughters), and Clemons's apparent lack of regard for his community ties (as expressed by his desire to flee to Mexico and his thoughts of suicide). Clemons has not shown that his bail is excessive. Accordingly, we overrule Clemons's issue in each case.

The orders of the trial court are affirmed.