**Opinion filed July 15, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00092-CR

_____

## JUAN KLASSEN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**

**Gaines County, Texas**

**Trial Court Cause No. 10-02-15962**

## M E M O R A N D U M   O P I N I O N

This is an appeal pursuant to Tex. R. App. P. 31. The trial court denied Juan Klassen's application for writ of habeas corpus to reduce the amount of his bail bond. We affirm.

Appellant was arrested for the murder of his uncle Abram Klassen. His bail bond was set at $500,000. Appellant requested that the trial court reduce the amount of bail to $150,000. After a hearing, the trial court denied appellant's request and ordered that the bail bond remain set at $500,000.

In his sole issue on appeal, appellant contends that the trial court abused its discretion when it failed to reduce his bail bond. Appellant contends that he made it clear the maximum amount of bail he could post was $150,000, that he established that he was neither a flight risk nor a threat to the community, and that failure to grant his application resulted in the use of bail as an instrument of oppression.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005) provides that the amount of bail:

> [I]s to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

The ability to make bond is one of the many factors to be considered; however, it does not control the amount of bail and will not automatically render an amount excessive. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Ex parte Branch*, 553 S.W.2d 380, 382 (Tex. Crim. App. 1977); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be eliminated, and the accused would be in a position to determine what his bail should be. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd); *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd).

In addition to the rules listed in Article 17.15, the following factors may also be considered: possible punishment, the accused's work record, his ties to the community, the length of his residency, his prior criminal record, his conformity with any prior bail bond

conditions, his ability or inability to make a bail bond, and the existence of any outstanding bail bonds. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981); *Charlesworth*, 600 S.W.2d at 317; *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Clemons*, 220 S.W.3d at 178; *Hunt*, 138 S.W.3d at 506; *Ex parte Simpson*, 77 S.W.3d 894, 896-97 (Tex. App.—Tyler 2002, no pet.); *DePena v. State*, 56 S.W.3d 926, 928-29 (Tex. App.—Corpus Christi 2001, no pet.); *Brown v. State*, 11 S.W.3d 501, 503 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The primary purpose of the bail bond is to secure the accused's presence in court. *Vasquez*, 558 S.W.2d at 479. Therefore, the amount should be sufficient to give reasonable assurance that the accused will comply but not so high that the amount is an instrument of oppression. Article 17.15; *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977). The accused has the burden to prove that bail is excessive. *Rubac*, 611 S.W.2d at 849; *Vasquez*, 558 S.W.2d at 479.

We review the trial court's ruling on a request to reduce bail under an abuse of discretion standard. Article 17.15; *Rubac*, 611 S.W.2d at 850; *Clemons*, 220 S.W.3d at 178. Therefore, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

At the hearing, Gaines County Deputy Sheriff Ronnie Marquez testified that he was the lead investigator in the murder of Abram Klassen. When Deputy Marquez arrived at the scene, the victim was deceased. The beating and severe injuries inflicted upon the victim resulted in what Deputy Marquez characterized as a brutal homicide.

Appellant testified that he was twenty-six years old and that he had been born in Mexico. While he had lived in Gaines County most of his life, he was not an American citizen but had dual citizenship in Mexico and Canada. Appellant stated there was no way he could raise enough money to post a $500,000 bond. However, he believed with assistance from his church and his family that he would be able to post a $150,000 bond. He also told the trial court that he would do his best to meet all of the conditions of his bail.

On cross-examination, appellant stated that his grandmother, some aunts, and some uncles lived in the Campos area of Mexico. The last time he had visited Mexico was about two months before the hearing.

Appellant's father Henry Klassen testified that appellant was currently doing yard work. His father stated that, after talking with a bondsman, he believed he could post a $150,000 bond

3

for his son. Klassen also testified that he owned a house worth $75,000, a shop worth $55,000, and a pickup worth $4,500. Klassen stated that appellant owned a home worth $70,000, a 2002 Chevrolet pickup, a $15,000 Walker mower, a $5,500 trailer, and a "couple more lawn mowers" worth $1,200. Klassen estimated that appellant made between $35,000 to $40,000 with his lawn business. Klassen also stated that the $15,000 to post the requested $150,000 bond would be provided by their church. Klassen described how appellant had gone to apologize to his brother, the victim. Appellant called Klassen, and Klassen went with him back to where the victim was. Klassen stated that he put his hand on his brother's chest and could tell that he was no longer alive. He was "as shocked as anyone to find out that [appellant] was involved in allegations of murdering [his] brother."

Shelby Concotelli, president and CEO of the Seminole Chamber of Commerce, testified that she had known appellant for eleven or twelve years. He was the best friend of one of her sons. Concotelli stated that appellant owned a successful landscaping business, a home, a pickup, and lawn maintenance equipment. He was a member of the Seminole Chamber of Commerce, and she described the referral she gave to him as "astronomical." Concotelli described that her reaction to the allegations against appellant was "shock."

Michael Lord testified that he was not only appellant's banker but also a personal friend. Lord stated that appellant was a good customer and that he had no concerns for the safety of the community should appellant be released on bond.

Nettie Adams testified that she had known appellant for twenty-four years. Adams described appellant as "a very calm, easygoing person, laid back, and he's an easy friend to have, easy friend to be to." Adams stated that she was absolutely shocked to learn of the allegations and did not believe appellant was capable of "something like that."

Jimmie Williams stated that appellant had been doing her yard for three or four years. He was someone she depended upon, and she had no concerns for her own safety or the safety of her neighbors should he be released on bond.

At the conclusion of the hearing, the trial court outlined the five factors stated in Article 17.15, acknowledged the testimony from appellant's father concerning the inability to make the $500,000 bail, and focused on the factors of the future safety of the community and the nature and circumstances of the offense. The trial court stated that, while there was much testimony about appellant's good character, the offense appeared to be out of the witnesses'

4

perception of his character. The trial court stated that it must take that into account when evaluating the witnesses' testimony concerning whether appellant would be a flight risk or could comply with the requirements and when determining if he would be a risk to the community. The trial court further stated that, when it considered "the nature of the alleged offense, it [did] not seem to comport with that description that most everybody had of their opinion of this young defendant."

The record reflects that appellant is accused of what Deputy Marquez described as the brutal homicide of a close family member; that he is a dual citizen of Mexico and Canada; that he has travelled to Mexico recently; that he has relatives in Mexico; that he owns his own business, home, equipment, and vehicle; and that the nature and circumstances of the offense were out of character with the witnesses' perception of him. We disagree with appellant's contentions that the trial court abused its discretion. The sole issue is overruled.

The order of the trial court is affirmed.


PER CURIAM


July 15, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5