Opinion filed September
16, 2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00208-CR 

                                                    __________

 

                              SHANE
OLIVER PARDUE, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 104th District Court

 

                                                            Taylor
County, Texas

 

                                                    Trial
Court Cause No. 17608-B

 



 

                                            M
E M O R A N D U M   O P I N I O N

            This
is an appeal pursuant to Tex. R. App. P.
31 from the trial court’s order denying a pretrial application to reduce his
bail.  We affirm.

Argument
in Trial Court

             Shane
Oliver Pardue was arrested for possession of methamphetamine, possession of
marihuana, and debit card abuse and is currently confined in the Taylor County
Jail.  Appellant also has a “hold” on him out of Midland County.  The bond in one
of the Taylor County cases was originally set at $75,000; however, the district
attorney agreed to a reduced amount of $30,000.  The total amount of the bail
bonds for the three Taylor County cases plus the Midland hold is $46,500. 
Appellant asked that the amount of the bonds on his Taylor County cases be
reduced to any amount under $10,000 so that he could participate in the court
supervised release program (CSRP).

Applicable
Law

“‘Bail’
is the security given by the accused that he will appear and answer before the
proper court the accusation brought against him, and includes a bail bond or a
personal bond.”  Tex. Code Crim. Proc.
Ann. art. 17.01 (Vernon 2005).  Article 17.15 provides that the amount
of bail:

[I]s to be regulated
by the court, judge, magistrate or officer taking the bail; they are to be
governed in the exercise of this discretion by the Constitution and by the
following rules:

 

1. 
The bail shall be sufficiently high to give reasonable assurance that the
undertaking will be complied with.

 

2. 
The power to require bail is not to be so used as to make it an instrument of
oppression.

 

3. 
The nature of the offense and the circumstances under which it was committed
are to be considered.

 

4. 
The ability to make bail is to be regarded, and proof may be taken upon this
point.

 

5. 
The future safety of a victim of the alleged offense and the community shall be
considered.               

 

Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon
2005).  The ability to make bond is one of the many factors to be considered;
however, it does not control the amount of bail and will not automatically
render an amount excessive.  Ex parte Charlesworth, 600 S.W.2d 316, 317
(Tex. Crim. App. 1980); Ex parte Branch, 553 S.W.2d 380, 382 (Tex. Crim.
App. 1977); Clemons v. State, 220 S.W.3d 176, 178 (Tex. App.—Eastland
2007, no pet.).  If the ability to make bond in a specified amount controlled,
then the role of the trial court in setting bond would be eliminated, and the
accused would be in a position to determine what his bail should be.  Ex
parte Hunt, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref’d);
Ex parte Miller, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref’d).

In
addition to the rules listed in Article 17.15, the following factors may also
be considered: possible punishment, the accused’s work record, his ties to the
community, the length of his residency, his prior criminal record, his
conformity with any prior bail bond conditions, his ability or inability to
make a bail bond, and the existence of any outstanding bail bonds.  Ex parte
Charlesworth, 600 S.W.2d at 317; Ex parte Ivey, 594 S.W.2d 98, 99
(Tex. Crim. App. 1980); Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex.
Crim. App. 1977); Clemons, 220 S.W.3d at 178; Ex parte Hunt, 138
S.W.3d at 506; Ex parte Simpson, 77 S.W.3d 894, 896-97 (Tex. App.—Tyler
2002, no pet.); DePena v. State, 56 S.W.3d 926, 928-29 (Tex. App.—Corpus
Christi 2001, no pet.); Brown v. State, 11 S.W.3d 501, 503 (Tex. App.—Houston
[14th Dist.] 2000, no pet.); see also Ex parte Rubac, 611 S.W.2d 848,
849 (Tex. Crim. App. 1981).  The primary purpose of the bail bond is to secure
the accused’s presence in court.  Ex parte Vasquez, 558 S.W.2d at
479.  The accused has the burden to prove that bail is excessive.  Id.

We
review the trial court’s ruling on a request to reduce bail under an abuse of
discretion standard.  See Ex parte Rubac, 611 S.W.2d at 850; Clemons,
220 S.W.3d at 178; see also Article 17.15 (giving trial court
discretion to set amount of bail).  As such, we will not disturb the trial
court’s ruling if it was within the zone of reasonable disagreement.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).  Rule 31 provides
that the sole purpose of an appeal in this situation is “to do substantial
justice” to the parties.

Trial
Court Proceedings

            Edna
Pardue testified that she was appellant’s mother.  She stated that she was
“pretty much the last of his family” that would be able to make bond for
appellant.  Edna worked at Cracker Barrel but had been unable to work for
almost a month because she had fractured her leg and had had pneumonia.  Edna
asked the court to release appellant from jail and allow him to come live with
her.  She was currently living in an apartment with her ex-husband (appellant’s
father) and had room for appellant.  She felt that appellant would find a job,
and she would provide him with the transportation he would need if he had a
CSRP bond.  Edna testified that appellant’s father had “only been working about
a week,” that she had no financial resources, and that she could not borrow
money for a bond.

            Edna
further testified that, before appellant was arrested on these charges, he
would come and stay with her a couple of times a week.  She did not know where he
lived the rest of the time.  Edna acknowledged that appellant had been in
trouble in 1995 and then again in Midland and Wichita Falls.

            Appellant
testified that he had only been in trouble when he was younger.  He was
released to a federal halfway house, and he had also had a parole issue with
the U.S. Parole Office that had been resolved.  Both instances came from the
charge of threatening a federal judge fourteen years prior to the Taylor County
charges.

            Appellant
explained that he had two brothers:  Shawn was his identical twin and Duwayne
was his older brother.  Appellant stated that he and Duwayne resembled each
other and that he felt “like every time they initially file charges on one of
[his brothers] they try to file the same charges on” him.  He further
testified, “One thing about having an identical twin brother and older brothers
that know your name and birthday is that they have a tendency to use those.”  Appellant
asked to be released on a CSRP bond and gave his word that he would report as
ordered.

            On
cross-examination, appellant testified that he had been accused of “things”
since his trouble in federal court.  He admitted that he had been convicted of
misdemeanor DWI in 2005, that he did some jail time in Wichita Falls on
“fraudulent use of identifying information” in 2006, and that he had a prior theft
by check offense.

            Abilene
Police Department Detective John Clark testified that he had been investigating
appellant in connection with four fraud cases.  There were videos involved in
the cases.  In some of the videos, appellant acted alone, and in some, he acted
with his brother Duwayne.  Detective Clark stated that he was able to
identify appellant in the videos by his distinctive lightning bolt tattoo on
the back of his neck.  Detective Clark further explained that the tattoo
Duwayne had on his neck was different from appellant’s tattoo.  Detective Clark
described the two cases for which appellant was arrested as involving “multiple
transactions” and “multiple checks.”  Detective Clark stated that appellant was
not cooperative during the investigation, that appellant was not able to be
reached and could not be found, and that he did not cooperate when he was
arrested.  Appellant used his twin brother Shawn’s identity.  Detective Clark
was certain that he had arrested appellant because of appellant’s tattoo.

            After
hearing counsel’s arguments, the trial court found that the bonds were
appropriate.

This
Court’s Ruling

            The
record does not support the contention that the trial court abused its
discretion in denying the request to reduce bail bond.  The two fraud cases
Detective Clark had filed involved over twenty video-recorded transactions.  Appellant
appeared in all of the transactions while his twin brother appeared in some of
the transactions as appellant’s partner.  When arrested, appellant used his
twin brother’s identity.  Although she was the only family member in a position
to help, his mother did not know where he had been living on the four or five
nights a week he did not stay at her apartment.

            The
order of the trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

September 16, 2010

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and
Strange, J.