**Opinion filed September 16, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00208-CR

_____

## SHANE OLIVER PARDUE, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 17608-B**

## M E M O R A N D U M   O P I N I O N

This is an appeal pursuant to TEX. R. APP. P. 31 from the trial court's order denying a pretrial application to reduce his bail. We affirm.

*Argument in Trial Court*

Shane Oliver Pardue was arrested for possession of methamphetamine, possession of marihuana, and debit card abuse and is currently confined in the Taylor County Jail. Appellant also has a "hold" on him out of Midland County. The bond in one of the Taylor County cases was originally set at $75,000; however, the district attorney agreed to a reduced amount of $30,000. The total amount of the bail bonds for the three Taylor County cases plus the Midland

hold is $46,500.  Appellant asked that the amount of the bonds on his Taylor County cases be reduced to any amount under $10,000 so that he could participate in the court supervised release program (CSRP).

*Applicable Law*

"'Bail' is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond." TEX. CODE CRIM. PROC. ANN. art. 17.01 (Vernon 2005).  Article 17.15 provides that the amount of bail:

> [I]s to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1.  The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2.  The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3.  The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4.  The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5.  The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005).  The ability to make bond is one of the many factors to be considered; however, it does not control the amount of bail and will not automatically render an amount excessive.  *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Ex parte Branch*, 553 S.W.2d 380, 382 (Tex. Crim. App. 1977); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.).  If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be eliminated, and the accused would be in a position to determine what his bail should be.  *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd); *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd).

In addition to the rules listed in Article 17.15, the following factors may also be considered: possible punishment, the accused's work record, his ties to the community, the length of his residency, his prior criminal record, his conformity with any prior bail bond conditions, his ability or inability to make a bail bond, and the existence of any outstanding bail bonds. *Ex parte Charlesworth*, 600 S.W.2d at 317; *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Clemons*, 220 S.W.3d at 178; *Ex parte Hunt*, 138 S.W.3d at 506; *Ex parte Simpson*, 77 S.W.3d 894, 896-97 (Tex. App.—Tyler 2002, no pet.); *DePena v. State*, 56 S.W.3d 926, 928-29 (Tex. App.—Corpus Christi 2001, no pet.); *Brown v. State*, 11 S.W.3d 501, 503 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). The primary purpose of the bail bond is to secure the accused's presence in court. *Ex parte Vasquez*, 558 S.W.2d at 479. The accused has the burden to prove that bail is excessive. *Id.*

We review the trial court's ruling on a request to reduce bail under an abuse of discretion standard. *See Ex parte Rubac*, 611 S.W.2d at 850; *Clemons*, 220 S.W.3d at 178; *see also* Article 17.15 (giving trial court discretion to set amount of bail). As such, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). Rule 31 provides that the sole purpose of an appeal in this situation is "to do substantial justice" to the parties.

### Trial Court Proceedings

Edna Pardue testified that she was appellant's mother. She stated that she was "pretty much the last of his family" that would be able to make bond for appellant. Edna worked at Cracker Barrel but had been unable to work for almost a month because she had fractured her leg and had had pneumonia. Edna asked the court to release appellant from jail and allow him to come live with her. She was currently living in an apartment with her ex-husband (appellant's father) and had room for appellant. She felt that appellant would find a job, and she would provide him with the transportation he would need if he had a CSRP bond. Edna testified that appellant's father had "only been working about a week," that she had no financial resources, and that she could not borrow money for a bond.

Edna further testified that, before appellant was arrested on these charges, he would come and stay with her a couple of times a week. She did not know where he lived the rest of the time.

Edna acknowledged that appellant had been in trouble in 1995 and then again in Midland and Wichita Falls.

Appellant testified that he had only been in trouble when he was younger. He was released to a federal halfway house, and he had also had a parole issue with the U.S. Parole Office that had been resolved. Both instances came from the charge of threatening a federal judge fourteen years prior to the Taylor County charges.

Appellant explained that he had two brothers: Shawn was his identical twin and Duwayne was his older brother. Appellant stated that he and Duwayne resembled each other and that he felt "like every time they initially file charges on one of [his brothers] they try to file the same charges on" him. He further testified, "One thing about having an identical twin brother and older brothers that know your name and birthday is that they have a tendency to use those." Appellant asked to be released on a CSRP bond and gave his word that he would report as ordered.

On cross-examination, appellant testified that he had been accused of "things" since his trouble in federal court. He admitted that he had been convicted of misdemeanor DWI in 2005, that he did some jail time in Wichita Falls on "fraudulent use of identifying information" in 2006, and that he had a prior theft by check offense.

Abilene Police Department Detective John Clark testified that he had been investigating appellant in connection with four fraud cases. There were videos involved in the cases. In some of the videos, appellant acted alone, and in some, he acted with his brother Duwayne. Detective Clark stated that he was able to identify appellant in the videos by his distinctive lightning bolt tattoo on the back of his neck. Detective Clark further explained that the tattoo Duwayne had on his neck was different from appellant's tattoo. Detective Clark described the two cases for which appellant was arrested as involving "multiple transactions" and "multiple checks." Detective Clark stated that appellant was not cooperative during the investigation, that appellant was not able to be reached and could not be found, and that he did not cooperate when he was arrested. Appellant used his twin brother Shawn's identity. Detective Clark was certain that he had arrested appellant because of appellant's tattoo.

After hearing counsel's arguments, the trial court found that the bonds were appropriate.

4

*This Court's Ruling*

The record does not support the contention that the trial court abused its discretion in denying the request to reduce bail bond. The two fraud cases Detective Clark had filed involved over twenty video-recorded transactions. Appellant appeared in all of the transactions while his twin brother appeared in some of the transactions as appellant's partner. When arrested, appellant used his twin brother's identity. Although she was the only family member in a position to help, his mother did not know where he had been living on the four or five nights a week he did not stay at her apartment.

The order of the trial court is affirmed.


TERRY McCALL

JUSTICE


September 16, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.