# NO. 12-22-00298-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *EX PARTE:* | § | *APPEAL FROM THE 369TH* |
|  | § | *JUDICIAL DISTRICT COURT* |
| *ROBERT JAMES YOUNGKER* | § | *CHEROKEE COUNTY, TEXAS* |

## MEMORANDUM OPINION

Robert James Youngker appeals from the trial court's denial of his application for writ of habeas corpus seeking a bond reduction. We reverse and remand.

## BACKGROUND

Appellant was arrested for the offense of continuous sexual abuse of a child and bail was set at $500,000. He is related to the ten-year-old who alleged that he sexually assaulted her. On October 1, 2021,bond was reduced to a $100,000 surety bond with conditions, but the order provided that if a grand jury indictment was not returned before October 7, bond shall be modified to a $100,000 personal recognizance bond. Appellant was indicted on October 6, and bond was set at $1,000,000 surety bond.

On October 26, 2022, Appellant filed an application for writ of habeas corpus seeking a bond reduction. At the hearing thereon, Appellant's wife, Rebecca Fay Youngker, testified that she worked and attempted to raise money but there was "no way … to raise up a million – for the million dollars." Rebecca testified that Appellant collected "five something a month" in Social Security before his incarceration, which he no longer receives while in jail. She had $1,000 in bank accounts, worked at Dollar General where she earned approximately $500 per week, and paid $500 per month in rent. She owns a 2003 F150, the value of which is approximately $2,800, and which serves as her sole mode of transportation. She paid a monthly cellular telephone bill of $35 per month and would possibly spend $200 per month on groceries if

Appellant was released. Rebecca testified that Appellant tried to work at Dollar Tree, but there were problems because of his inability to read and write. Appellant's mother, who resides with Rebecca, draws a disability check of $841 and does not own a vehicle. Rebecca explained that she, Appellant, and his mother, live off her income and the disability checks paid to Appellant and his mother. She contacted a bondsman but testified that she would probably not be able to pay the ten percent, i.e., $100,000, required by the bondsman. But if the trial court reduced the bond to $50,000 or $75,000, she could probably save enough money to satisfy the ten percent.

Rebecca testified that Appellant was born and raised in Jacksonville, Texas, and cannot read or write well. If released, Appellant would reside with Rebecca and his mother in Rebecca's home. No children reside at the home. She stated that Appellant would stay home and do chores while she worked. Rebecca testified that she knows who the victim is but neither she nor Appellant have had contact with the victim since Appellant's incarceration. She believed Appellant could follow bond conditions that required no contact with the victim or the victim's family. She likewise believed he could follow bond conditions requiring that he report to Cherokee County for pretrial supervision. She did not believe Appellant would flee or avoid prosecution if released and she believed she could bring him to court each time his presence was required in court.

Appellant asked the trial court to set bond at $50,000 with conditions. The State requested a reduction to $500,000 with conditions, in the event the trial court granted the writ. The trial court denied Appellant's application. This appeal followed.

### BOND AMOUNT

In one issue, Appellant argues that the trial court abused its discretion in declining to reduce the amount of his bail bond.

### Standard of Review and Applicable Law

The decision regarding a proper bail amount lies within the sound discretion of the trial court. TEX. CODE CRIM. PROC. ANN. art. 17.15 (West Supp. 2022). Accordingly, we review the trial court's denial of a request to reduce bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (per curiam). In determining whether the trial court abused its discretion, we do not substitute our judgment for that of the trial court. *Montgomery v. State*, 810 S.W.2d

372, 379-80 (Tex. Crim. App. 1990). The purpose of our review is to determine whether the trial court's decision was made without reference to any guiding rules or principles of law, or in other words, whether the decision was arbitrary or unreasonable. *Id*. at 380. An abuse of discretion occurs when a trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id*. at 391 (op. on reh'g). The burden of proof is on the petitioner for reduction in bail to show that the bail set is excessive. *Rubac*, 611 S.W.2d at 849.

The primary purpose of setting a pretrial bond should be to secure an appellant's presence at trial. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Rincon*, Nos. 04-13-00715-CR—04-13-00718-CR, 2014 WL 2443870, at *1 (Tex. App.—San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication). The amount of the bond necessary to achieve that purpose is committed to the trial court's sound discretion, although its discretion is bounded and guided by constitutional and statutory provisions. *See Ex parte Estrada*, 398 S.W.3d 723, 724 (Tex. App.–San Antonio 2008, no pet.). The federal constitution, our state constitution, and our state laws prohibit "excessive" bail. U.S. CONST. Amend. VIII; TEX. CONST. art. I, § 13;  TEX. CODE CRIM. PROC. ANN. art. 1.09 (West 2005).

Article 17.15 of the code of criminal procedure provides that "bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with[;]" however, "[t]he power to require bail is not to be so used as to make it an instrument of oppression." TEX. CODE CRIM. PROC. ANN. art. 17.15(1), (2). Although a defendant's ability to make bail must be considered, it is not a controlling consideration. *See id*. art. 17.15(4); *Rodriguez*, 595 S.W.2d at 550. The primary considerations when assessing the reasonableness of bail are the punishments that can be imposed and the nature of the offenses. *Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 917 (Tex. App.—San Antonio 2022, no pet.); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Article 17.15 also requires the consideration of the future safety of the victim of the alleged offense, law enforcement, and the community.  TEX. CODE CRIM. PROC. ANN. art. 17.15 (5).

Along with the factors in Article 17.15, courts have held there are seven additional factors to be weighed in determining the amount of bond: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the

existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Rubac*, 611 S.W.2d at 849–50.

**The Evidence**

We begin by summarizing the evidence from the hearing regarding the primary considerations, the nature of the offense and the potential punishments, as well as the other applicable factors.

### *Nature of Offense and Potential Punishment*

The nature of the offense and the potential punishment weigh in favor of a high bail amount. If convicted of continuous sexual abuse of a child, Appellant faces twenty-five years to life in prison, without the possibility of parole. *See* TEX. PENAL CODE ANN. § 21.02 (h) (West Supp. 2022); *see also* TEX. GOV'T CODE ANN. § 508.145(a)(2) (West Supp. 2022).

### *Safety of Victim and Community*

The safety of the victim and the community also supports a high bail amount. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(a)(5) (West 2019). Appellant is charged with engaging in sexual contact with a child younger than fourteen, including touching and penetration. Appellant is relaed to the alleged victim. The victim told Officer Tony Smith of the Jacksonville Police Department that Appellant sexually assaulted her five or ten times, told her not to mention it to anyone, and offered her toys to reward her for remaining silent. The victim resided with Appellant for a period of time during the applicable timeframe and as of the offense report's date, she no longer resided with Appellant but still resided in Cherokee County. According to Rebecca's son, he, Appellant, Rebecca, and the victim moved into the home in which Appellant and Rebecca currently reside. The victim told Rebecca's son that Appellant had been touching her and the son told Rebecca, who did not believe the victim. The son claimed that Rebecca confronted Appellant, who denied the allegations. He further claimed that Rebecca asked the victim, in Appellant's presence, whether the conduct was happening and the victim looked at Appellant and replied "no." During an interview, Rebecca acknowledged that her son "kind of told her something," but she did not believe it and did nothing about it. She did confront Appellant, who denied the allegations.

The record further indicates that Appellant intends to reside at Rebecca's residence in a Jacksonville neighborhood, also located in Cherokee County, if released on bond. Appellant would stay home when Rebecca worked.

*Financial Resources and Ability to Make Bail*

Rebecca testified that she has $1,000 in her bank accounts, earns approximately $500 per week, owns a 2003 F150 worth approximately $2,800, and rents her home for $500 per month. Her testimony reflects additional monthly expenses of approximately $235. Her mother-in-law receives a monthly disability check in the amount of $841. Rebecca's testimony suggests that Appellant's inability to read and write limited his ability to work. And since his incarceration, Appellant no longer received his disability checks. Although Rebecca contacted a bondsman, she claimed to be unable to pay the required ten percent for a $1,000,000 bond. She could probably pay the ten percent for a $50,000 or $75,000 bond.

### ***Rubac* Factors**

The record demonstrates that Appellant was born and raised in Jacksonville. He resided with Rebecca before his arrest and would return to live with her and his disabled mother if released. Rebecca's testimony suggests that Appellant's employment is limited by his inability to read and write. According to Rebecca, neither she nor Appellant have had contact with the victim. She believed Appellant could follow bond conditions that required no contact with the victim or her family, as well as reporting requirements. She did not believe Appellant would flee or avoid prosecution if released and represented that she could bring him to court when required. The record further reflects that when an officer approached Appellant at home and asked him to come to the police department, Appellant voluntarily did so the same day as asked.

## Analysis

Appellant argues that he has limited resources for making bail and that bail is substantially higher than what he can realistically afford. He maintains there are no factors that support a seven-figure bond. The State responds that the severity of the offense, potential punishment range, and character of evidence support a higher bail amount. The State further argues that Appellant poses a risk to the community.

Our review of the evidence reflects that the bond is substantially higher than Appellant can realistically financially afford. *See **Ramirez-Hernandez***, 642 S.W.3d at 920 (defendant should ordinarily offer evidence of his available resources and unsuccessful attempts to post bail in current amount). However, a defendant's inability to make bail does not automatically render the amount excessive. **Ex parte Mazuera**, No. 01-21-00612-CR, 2022 WL 1110989, at *9 (Tex. App.—Houston [1st Dist.] Apr. 14, 2022, no pet.) (mem. op., not

designated for publication); *see also* **Ex parte Vance**, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980). If a defendant's ability to make bail controlled, the trial court's role in setting bail amounts would be eliminated and the defendant would be in the position to determine the proper amount of bail, which is antithetical to the purpose of a bond. *See* **Milner v. State**, 263 S.W.3d 146, 150 (Tex. App.—Houston [1st Dist.] 2006, no pet.). But bail set in an amount that cannot be satisfied has the potential to displace the presumption of innocence. **Mazuera**, 2022 WL 1110989, at *9; *see also* **Ex parte Bogia**, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Appellant was arrested on June 24, 2021. His inability to make bail or post a bond since that time is a factor to be considered. *See* **Mazuera**, 2022 WL 1110989, at *9; *see also* **Rincon**, 2014 WL 2443870, at *3. When bail is so high that a person cannot realistically pay for it, the trial court essentially displaces the presumption of innocence. *See* **Mazuera**, 2022 WL 1110989, at *10. Bail cannot be used as an instrument of oppression and bail set in a particular amount, when it assumes that the defendant cannot afford bail in that amount becomes oppressive. *Id.*; *see also* **Ex parte Durst**, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (where bail amount set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression"). Here, there is no direct evidence that the trial court set Appellant's bond at $1,000,000 for the express purpose of keeping Appellant incarcerated. *cf.* **Ex parte Harris**, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (trial court stated, "[it would] rather see him in jail than to see someone's life taken"). But the law only requires bail be set in an amount high enough to give reasonable assurance that a defendant will appear for trial. TEX. CODE CRIM. PROC. ANN. art. 17.15(1). Bail amounts in excess of seven figures are almost never required, even in capital cases. *See* **Flores**, 2021 WL 3922919, at *4 (citing **Ludwig v. State**, 812 S.W.2d 323, 323 (Tex. Crim. App. 1991)).

Although the appropriate amount of bail is an individualized determination, a review of other cases can be instructive. *See id.*, at * 11. While courts traditionally set high bonds in cases involving offenses against children, the right to a reasonable bail is a complement to and based on the presumption of innocence. *Id.* The repellant nature of the accusation does not diminish the presumption of the accused's innocence and the provision in Article 17.15 providing "[t]he power to require bail is not to be used as to make it an instrument of oppression" mandates

6

that bail is not to be used to insure pre-conviction punishment. *Id.*; TEX. CODE CRIM. PROC. ANN. art. 17.15(a)(2).

The State refers this Court to **Clemons** in support of the trial court's bond. In **Clemons**, the defendant was charged with two cases of aggravated sexual assault of a child and two cases of indecency with a child. **Clemons**, 220 S.W.3d at 177. Initially, total bail was set at $600,000. *Id.* After a hearing, the trial court reduced total bail for all cases to $400,000 ($75,000 in each of the indecency cases and $150,000 and $100,000 in the aggravated sexual assault cases). *Id.* The Eastland Court of Appeals affirmed. *Id.* at 179. However, in **Clemons**, the defendant attempted to persuade his wife to flee to Mexico with him. *See id.* He also told several persons that he would kill himself rather than go to prison. *See id.* There are no such circumstances present in the instant case. Nor is there any direct evidence to suggest that Appellant would flee if released on bail pending trial.

In **Ex parte Smith**, No. 09-06-00104-CR, 2006 WL 1511480 (Tex. App.—Beaumont May 31, 2006, no pet.) (mem. op., not designated for publication), the defendant was charged with aggravated sexual assault of a child and indecency with a child. **Smith**, 2006 WL 1511480, at *1. The evidence showed that defendant had a good work record, no prior criminal history, and significant ties to the prosecuting county. *Id.* at *2. The magistrate set bail at $250,000 in the aggravated assault case and $200,000 in the indecency case. *Id.* at *1. After a hearing on the defendant's request for a bail reduction, the trial court set bail at $125,000 in the aggravated sexual assault case and $75,000 in the indecency with a child case. *Id.* The court of appeals held these amounts to be excessive and set bail at $50,000 and $25,000. *Id.* at *7. The record in this case reflects a virtually nonexistent work record, but Appellant has no recent criminal history and has ties to the prosecuting county.

In **Ex parte Bennett**, No. 02-07-00175-CR, 2007 WL 3037908, at *4 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication), the defendant was charged with multiple counts of aggravated sexual assault of a child. **Bennett**, 2007 WL 3037908, at *4. In upholding total bail of $600,000, the court noted the serious nature of the offenses and defendant's failure to maintain contact with his attorney when the bonds were originally set at a lower amount. *Id.* In this case, there is no evidence Appellant failed to maintain contact with his attorney. Like Bennett, Appellant was currently unemployed, but

unlike Bennett who had minimal ties to the prosecuting county, Appellant resided in Jacksonville for his entire life.

In *Ex parte Bratcher*, Nos. 05-05-00634-CR, 05-05-00635-CR, 2005 WL 1634971, at *5 (Tex. App.—Dallas July 13, 2005, no pet.) (mem. op., not designated for publication), the defendant was charged with two aggravated sexual assault of a child offenses with total bonds of $1,000,000. *Bratcher*, 2005 WL 1634971, at *5. In upholding the trial court's denial of bond reduction, the court noted the defendant had previously been tried and convicted of sexual assault of the same victim and had three prior convictions for sexual assaults against children. *Id.* The victims in those cases were students at a daycare that the defendant co-owned with his mother who still operated the facility and with whom defendant was going to stay while on bond. *Id.* Further, the work the defendant would be doing while on bond involved traveling, which would make him a higher flight risk. *Id.* These facts led the court to find the trial court struck the balance between the presumption of innocence and the State's interest in assuring the defendant's presence at trial. *Id.* Here, Appellant does not have a criminal history of such a nature. There is no suggestion in the record that he has a history of sexual assault or other violence against children. Appellant was willing to submit to bond conditions, including a condition that he refrain from contacting the victim or her family.  There is no direct evidence that Appellant would attempt to contact the victim if released on bond.

In *Ex parte Ramirez-Hernandez*, the defendant was charged with three counts of aggravated sexual assault of a child against one victim, his stepdaughter. *Ramirez-Hernandez*, 642 S.W.3d at 912. The bonds were set at $500,000 for one count and $250,000 on the other two counts, for a combined $1,000,000 bond. *Id.* In that case, the state offered no evidence that the appellant had any criminal history, and the appellant offered testimony that he was employed for the past ten years and could return to his job if released on bond. *Id.* at 919. Despite not being a citizen of the United States and having no legal status in the United States, the appellant resided in the prosecuting county for the previous fourteen years. *Id.* The court of appeals determined that the circumstances of the offense, possible sentence, and concerns that the appellant posed a flight risk favored a higher bond, but when balanced, did not warrant a combined $1,000,000 bond amount. *Id.* at 925.

In *Ex parte Bordelon*, No. 04-20-00364-CR, 2021 WL 1988259 (Tex. App.—San Antonio May 19, 2021, pet. ref'd) (mem. op., not designated for publication), the appellant was

awaiting trial on five felony offenses: one count of continuous sexual abuse of a child; one count of aggravated sexual assault of a child; and three counts of aggravated assault with a deadly weapon. *Bordelon*, 2021 WL 1988259, at *1. *Bordelon* involved extraordinary facts that do not arise in this case. In *Bordelon*, the appellant was first indicted for continuous sexual abuse of a child, D.B., on March 6, 2014, and while on trial for the offense, a second child, M.R., made an outcry of sexual assault against Bordelon during the trial, which resulted in a mistrial. *Id.* On November 15, 2015, Bordelon was re-indicted for continuous sexual abuse of D.B. and additionally indicted for aggravated sexual assault of M.R., along with three counts of aggravated assault with a deadly weapon for pointing a shotgun at D.B., his wife Priscilla, and D.B.'s uncle Carl Riley. *Id.* at *1, *4. The total bonds were set at $1,000,000. *Id.* at *1. The appellant filed a pretrial writ of habeas corpus seeking a bond reduction, which the trial court denied. *Id.* at *1. At the hearing, the State offered into evidence the probable cause affidavits supporting the arrest warrants. *Id.* at *3. The documentary evidence submitted into the record at the hearing revealed that the appellant began touching his daughter's vagina when she was seven years old, penetrated her with his fingers and penis, and told her not to tell her mother, Priscilla. *Id.* at *4. With respect to the aggravated assault charges, the affidavit shows that after D.B. told Priscilla about the sexual abuse, the appellant expressed a desire to end his life and pointed a gun at D.B., Priscilla, and Carl before fleeing in his truck. *Id.* The evidence also showed that M.R. was preparing to testify for the defense when she outcried to the appellant's trial counsel that the appellant also sexually abused her by penetrating her with his finger when she was six or seven years old. *Id.* Finally, one report entered into evidence at the hearing reflected the existence of a potential third victim alleging sexual abuse at the appellant's hands, which was under investigation by law enforcement. *Id.* Ultimately, the appellate court held that the appellant failed to meet his burden that, under the relevant factors, the trial court abused its discretion considering the nature of the charges, the potential punishments, and the safety of the victim. *Id.* at *8.

*Ex parte Greenwood*, No. 09-17-00257-CR, 2017 WL 5179962 (Tex. App.—Beaumont Nov. 8, 2017, no pet.) (mem. op., not designated for publication) is another case with exceptional facts. In *Greenwood*, on September 21, 2016, the appellant was indicted for continuous sexual abuse of a child, alleging that he perpetrated continuous sexual abuse of a child on or about September 1, 2007 through June 14, 2011. *Id.* at 1. The indictment further alleged that the

appellant had previously been convicted of murder. *Id*. The appellant bonded out on the charge and was subsequently indicted on June 7, 2017 for indecency with a child, which allegedly occurred on February 7, 2017, during the time the appellant was out on bond for the continuous sexual abuse of a child charge. *Id*. The trial court set bail in the indecency case at $2,500,000. *Id*. The appellant filed an application for writ of habeas corpus seeking a bond reduction, which the trial court granted, reducing the bond to $1,000,000. *Id*. The trial court took judicial notice of both charges and stated on the record that it considered the factors set forth in Article 17.15, the nature of the offense and circumstances of both the continuous sexual abuse case and the indecency with a child case, and the safety of the victims and the community. *Id*.; TEX. CODE CRIM. PROC. ANN. art. 17.15. On appeal, the court noted that the appellant was previously convicted of two counts of murder by strangling two females. *Greenwood*, 2017 WL 5179962, at *4. The court ultimately held that the appellant did not meet his burden to show that the bond was excessive in light of the evidence that the appellant had previously been convicted of murdering two women and committed the offense of indecency with a child while on bond for the offense of continuous sexual abuse of a child. *Id*.

We agree with the State that the nature and severity of the offense favor a high bond. The allegations contained in the incident report are very serious, and Appellant faces the possibility of spending the rest of his life in prison. However, there is no evidence that Appellant plans to flee if released on bond. *Compare Clemons*, 220 S.W.3d at 179 (defendant attempted to persuade wife to flee to Mexico with him and told several persons he would kill himself rather than go to prison). And, as previously discussed, there is no evidence that Appellant attempted to avoid arrest. The only evidence in the record regarding Appellant's intentions if released on bond is Rebecca's testimony that Appellant plans to return to her home and consent to bond conditions. Moreover, Appellant is a lifelong resident of Jacksonville.

Although there are factors in this case, namely the severity of the offense and the potential punishment, that support a higher bail amount, we cannot agree that the evidence supports a total bail amount of $1,000,000. Except for *Bordelon, Bratcher*, and *Greenwood*, in which there were extreme aggravating circumstances that are not present in this case, we are unaware of any cases supporting a bond of $1,000,000 or more based upon the evidence adduced at the pretrial hearing and the relevant considerations. *See, e.g., Ex parte Conklin*, Nos. 12-22-00209-CR, 12-22-00210-CR, 2022 WL 16568281, at *1, 9 (Tex. App.—Tyler Oct. 31, 2022, no

pet.) (mem. op., not designated for publication) (reversing bond amounts of $500,000 on indecency charge and $1,000,000 on continuous sexual abuse charge); *Ramirez-Hernandez*, 642 S.W.3d at 925 ($1,000,000 bond excessive for three counts of aggravated sexual assault of child despite fact that appellant was Mexican citizen without a legal status in United States); *Ex parte Williams*, No. 12-21-00032-CR, 2021 WL 2816404, at *4 (Tex. App.—Tyler June 30, 2021, no pet.) (mem. op., not designated for publication) (reversing total bail of $600,000 for eight counts of indecency with a child and sexual assault of a child when no proof appellant was flight risk); *Ex parte Turner*, No. 12-20-00230-CR, 2021 WL 1916832, at *1 (Tex. App.—Tyler May 12, 2021, no pet.) (mem. op., not designated for publication) (reversing total bail of $500,000 for third degree felony of unlawful restraint involving young children); *Ex parte Rean*, No. 03-09-00032-CR, 2009 WL 2902707, at *8 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op., not designated for publication) (affirming bail of $250,000 in sexual assault case). As previously discussed, bonds in excess of seven figures are almost never required, even in capital cases. *See Flores*, 2021 WL 3922919, at *4.

Accordingly, after reviewing the record in this case and considering the factors in Article 17.15, we conclude the trial court abused its discretion in denying Appellant's request for pre-trial reduction of bond and hold the amount of Appellant's bail is unsupported by the evidence and therefore excessive. We sustain Appellant's sole issue.

## DISPOSITION

Having sustained Appellant's sole issue, we *reverse* and *remand* this case to the trial court for further proceedings consistent with this opinion.

JAMES T. WORTHEN
Chief Justice

Opinion delivered February 28, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2023**

**NO. 12-22-00298-CR**

**ROBERT JAMES YOUNGKER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 369th District Court

of Cherokee County, Texas (Tr.Ct.No. 21921)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*