# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00259-CR

## Ex parte Mark Moore

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-11-0929-HC, HONORABLE DAN R. BECK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Mark Moore, who is confined while awaiting trial on charges that he committed the offense of continuous sexual abuse of a child, *see* Tex. Penal Code Ann. § 21.02 (West Supp. 2011), filed an application for writ of habeas corpus seeking a reduction in his bail bond. Following a hearing, the district court denied the application. In a single issue on appeal, Moore asserts that the amount of bond is excessive. We will affirm the district court's order.

## BACKGROUND

In June 2011, Moore was arrested for the offense of aggravated sexual assault of a child. He posted a surety bond in the amount of $150,000 and was released from jail. In November 2011, Moore was formally charged with the offense of continuous sexual abuse of a child, and bond was set in the amount of $475,000. Moore subsequently filed a motion to reduce bail, which the district court denied. Moore later filed an application for writ of habeas corpus, and the district court held a hearing on the application.

The only witness to testify at the hearing was Moore's mother, Roxanne. Roxanne testified that Moore had not been able to post what defense counsel characterized as "over $600,000 in bonds," even though his family had tried to do so by contacting an attorney in San Antonio.[1] According to Roxanne, Moore "has no income" and that, prior to his confinement in jail, Moore had "stayed at home" while his wife worked as a nurse. The original bond, Roxanne added, was satisfied in part by Moore's grandmother, who had paid $15,000 to obtain Moore's release.[2]

---

[1] Counsel's assertion that the bond amount is over $600,000 is based on his belief that Moore must post both the $475,000 bond for the charged offense and the original $150,000 bond. In his brief, counsel claims that Moore "must post both bonds because the district attorney has not declined or dismissed the first charge and the $150,000 bond was released when the Appellant turned himself in after the capias was issued from the indictment." Moore made a similar claim at the hearing and elicited testimony from Roxanne that it was her understanding that the "total" amount of the bond was over $600,000. However, on cross-examination, the prosecutor asked Roxanne, "And what makes you think that his bond is $600,000? It's—are you aware that the bond that he would have to make now is 475,000?" Roxanne answered, "Yes." But on re-direct examination, Roxanne again agreed with counsel's statement that the "total number of bonds that have to be posted for his release is the $400,000 [sic] bond and $150,000 posted over again."

The trial court made no express finding on the amount of bond that had been set. However, we observe that the only charging instrument in the record is the indictment for the offense of continuous sexual abuse of a child, and the bond amount written on the indictment is $475,000. Although Moore was originally *arrested* for the offense of aggravated sexual assault, there is no indication in the record that Moore has actually been *charged* with that offense. In fact, as Moore states in his brief, the two offenses arise from the same incident, which suggests that the State made a decision to charge one offense instead of the other. There is also no indication in the record that the State has reinstated the $150,000 bond for the aggravated-sexual-assault offense in addition to the $475,000 for the charged offense. At any rate, even if the total bond was $625,000 as Moore claims, it would not change the outcome of this case based on the particular facts and circumstances presented here.

[2] A bail bondsman typically charges 10% of the total bond amount and requires "substantial collateral" before agreeing to post the bond. *See Ex parte Sabur-Smith*, 73 S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Testimony was also elicited from Roxanne relating to the issue of whether Moore, who was from Indiana and had family still living there, was a flight risk. Counsel asked Roxanne, "If released, will Mr. Moore stay here in Texas?" Roxanne answered, "Yes, if need be." Counsel did not seek elaboration of this response. However, on cross-examination, the prosecutor inquired into the matter further:

> Q. So . . . you said that your son intended on staying in Texas?
>
> A. Yes, ma'am.
>
> Q. Do you recall that in all of your conversations you talk about him moving home back to Indiana to await charges?
>
> A. Yes. I would love to have him home in Indiana. We also have a place in Arkansas that he can go stay. But if need be he stays here. He will stay here. I have no problem with that. And we will get through it the best way we can because that's what family does.
>
> Q. And he does not have any family in Texas, does he?
>
> A. He does not except his wife.
>
> Q. And you're aware that his wife actually is charged with tampering with evidence—
>
> A. I do.
>
> Q. —in this case?
>
> A. Yes, I do. I am.
>
> Q. That she is not—she's not supportive of her children in these charges; correct?
>
> A. I'm sorry. I don't know that she's not.
>
> Q. So the only tie that he has to this community is the mother of the children who is a non-protective mother?

A.  I wouldn't say that, no.

Q.  So anyway, you agree that his intent all along has been to go back to Indiana?

A.  No. His intent is to get to the bottom of this and get it settled and prove his innocence. If he has to stay in Texas, he will stay in Texas.

Roxanne also provided the following testimony regarding an allegation by the State that Moore had violated the conditions of his prior release by contacting his daughter, the alleged victim:[3]

Q.  From . . . September 15th until when he was re-arrested in November did [Moore] violate those conditions of that bond?

A.  No, sir. He did not.

Q.  Now, if there was contact prior to that was there any order or anything else in place preventing anyone from contacting him?

A.  There was no contact with [the alleged victim].

Q.  Who was initiating the contact? Was [the alleged victim] initiating the contact?

A.  [The alleged victim] had contacted [Moore] a couple of times but he did not answer.

---

[3] One of the conditions of Moore's prior release was that he not "communicate nor attempt to communicate" with his daughter. At the beginning of the habeas hearing, the State argued, "While he's out on that [original] bond, he actually did have contact with the victim. And at the last hearing [on the motion to reduce bond], the defendant's father testified that he did. . . . They brought in their own witnesses and in his testimony he said that yeah he had contact with [the alleged victim]." We cannot review the alleged testimony, however, because a transcript of the hearing on the motion to reduce bail was not admitted into evidence during the habeas hearing. Nor is there any indication in the record that the district court took judicial notice or was otherwise aware of the evidence that was admitted at the prior hearing, which was before a different judge.

4

Following Roxanne's testimony, counsel argued that the amount of bond was excessive because Moore had no ability to post it, and he cited cases from this Court in which lower bond amounts had been found to be acceptable, asserting that this Court "kind of hangs around the $250,000 mark." Counsel concluded, "We're asking that because Mr. Moore has no income and is going to be paying for an apartment to stay here in Texas that he be given a $10,000 bond. But we'll certainly leave it up to the court's discretion."[4] In response, the prosecutor characterized the bond amount as "reasonable" and argued that this issue had already been considered at the prior hearing on the motion to reduce bond. She explained, "Judge Henry heard all the evidence back in November. He heard more evidence than this. And he agreed that it was reasonable. Nothing has changed since then. All the facts and circumstances are the same." She added that she believed Moore would contact his children and that the mother is "non-protective" of the children and is on Moore's "side." Therefore, in the prosecutor's view, "if he's released we can't rely on any of the adults in these girls' lives to keep them safe." To this argument, counsel replied, "The children are not in the custody of the mother. Mother has no control over where the children are. They're in foster care. They're living back with their aunt [the mother's sister] in Indiana." Immediately following argument, the district court denied relief. This appeal followed.

**STANDARD AND SCOPE OF REVIEW**

The setting of bail is committed to the sound discretion of the trial court, but the exercise of that discretion is governed by the constitution and by statute. In setting bail, a balance

---

[4] No evidence was presented as to how Moore would be able to "pay for an apartment to stay here in Texas" or why he would be able to post a $10,000 bond but not a higher amount.

must be struck between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial. *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd). Both the federal and state constitutions prohibit "excessive" bail. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. Bail is excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. In addition to the constitutional prohibition against excessive bail, the Texas Legislature has imposed the following statutory requirements:

1.  The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2.  The power to require bail is not to be so used as to make it an instrument of oppression.

3.  The nature of the offense and the circumstances under which it was committed are to be considered.

4.  The ability to make bail is to be regarded, and proof may be taken upon this point.

5.  The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005).

In setting the amount of bail, the trial court may also give consideration to such factors as: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; and (6) aggravating circumstances alleged to have been involved in

6

the charged offense. *See Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981)).

We review the trial court's ruling on a request to reduce bail under an abuse-of-discretion standard. *See Rubac*, 611 S.W.2d at 850; *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (per curiam). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Clemons*, 220 S.W.3d at 178.

In a habeas case, the applicant bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). The burden of proof is on an applicant who claims bail is excessive, *see Rubac*, 611 S.W.2d at 849; *Milner v. State*, 263 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2006, no pet.), and we will not reduce the trial court's bail amount unless the applicant has satisfied this burden. *See Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981) (reducing bail amount after reviewing court was "completely satisfied that petitioner discharged her burden of showing her entitlement" to bail reduction); *Ex parte Welch*, 729 S.W.2d 306, 310 (Tex. App.—Dallas 1987, no pet.) (refusing to reduce bail amount when reviewing court found, after considering "all of the evidence and factors relevant to determining the amount of bond," that "applicant has failed to satisfy his burden of showing that the trial court

7

abused its discretion in refusing to lower applicant's bond"). We proceed to review the evidence presented at the habeas hearing in light of the above considerations.

**Nature and circumstances of offense**

We first consider the nature and circumstances of the offense and the possible length of Moore's sentence if convicted. *See Rubac*, 611 S.W.2d at 849. Moore is alleged to have sexually abused his daughter on a continuous basis from 2008 through 2011, when she was between the ages of nine and twelve years old. During that time, Moore is alleged to have committed nine different acts of sexual abuse, including aggravated sexual assault of a child, indecency with a child by contact, and sexual performance of a child. Thus, the record reflects that the allegations in this case are very serious, and even more so when they are considered in light of the familial relationship between Moore and his alleged victim. *See Esquivel v. State*, 922 S.W.2d 601, 603 (Tex. App.—San Antonio 1996, no pet.) ("The [sex] offenses charged in this case . . . are extremely repugnant. Considering that the accused is the natural father of the victim, a greater sense of helplessness and overreaching by a person in authority cannot be imagined. A child has a right to look to her parents for support and guidance when there are no others. Such behavior, if true, not only is an affront to a civilized society, but to any primitive tribe of people as well.").[5]

When reviewing the appropriate bond for a particular offense, appellate courts often compare bond amounts in other cases involving offenses of the same degree. This is because such offenses carry the same punishment range, which is a proper consideration in determining the nature

---

[5] In his brief, Moore has attached what he purports to be a "letter of apology for being dishonest" from the alleged victim that was posted online, which he argues should serve as mitigating evidence. This document was not admitted into evidence at the hearing, however.

of the offense charged. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977); *Maldonado*, 999 S.W.2d at 95.

Continuous sexual abuse of a child is a first-degree felony offense, punishable by life imprisonment or a term of not more than 99 years or less than 25 years. *See* Tex. Penal Code Ann. § 21.02(h). Perhaps reflecting the wide range of punishment for such offenses, Texas courts have approved bond amounts as low as $1,000 and as high as $1,000,000 for first-degree felony offenses.[6] The bond amount in this case is within the range of bond amounts approved for other first-degree felonies. The bond amount in this case is also comparable to bond amounts approved in similar cases involving sex offenses committed against children.[7]

---

[6] *See, e.g.*, *Ex parte Carson*, 215 S.W.3d 921, 924 (Tex. App.—Texarkana 2007, no pet.) (setting bail at $1,000 in case involving first-degree felony offense of possession of controlled substance); *Gonzalez v. State*, 996 S.W.2d 350, 353 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (approving bail set at $90,000 in case involving aggravated robbery); *see also Tran v. State*, No. 01-06-00035-CR, 2006 Tex. App. LEXIS 5658, at *1, 12 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (mem. op., not designated for publication) (approving bail set at $800,000 for cocaine possession and $500,000 for marihuana possession); *Pharris v. State*, No. 14-06-00788-CR, 2006 Tex. App. LEXIS 9899, at *1, 6 (Tex. App.—Houston [14th Dist.] Nov. 16, 2006, pet. ref'd) (per curiam) (mem. op., not designated for publication) (approving bail set at $500,000 in case involving offense of first-degree felony theft,); *Ex parte Cuevas*, No. 11-03-00402-CR, 2004 Tex. App. LEXIS 2457, at *1, 15 (Tex. App.—Eastland Mar. 18, 2004, no pet.) (mem. op., not designated for publication) (approving bail set at $1,000,000 in case involving offense of engaging in organized criminal activity to commit theft).

[7] *See, e.g.*, *Clemons v. State*, 220 S.W.3d 176, 179 (Tex. App.—Eastland 2007, no pet.) (per curiam) (approving total bail set at $600,000 in case involving two indictments for aggravated sexual assault of child and two indictments for indecency with child); *see also Ex parte Hall*, No. 10-11-00087-CR, 2011 Tex. App. LEXIS 4588, at *1, 6 (Tex. App.—Waco June 15, 2011, no pet.) (mem. op., not designated for publication) (approving bail set at total of $600,000 for eleven counts of aggravated sexual assault of child); *Ex parte Bennett*, No. 02-07-00175-CR, 2007 Tex. App. LEXIS 8292, at *1, 12 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (approving bail set at total of $600,000 for three counts of aggravated sexual assault of child); *Billings v. State*, No. 11-07-00057-CR, 2007 Tex. App. LEXIS 6340, at *1, 8 (Tex. App.—Eastland Aug. 9, 2007, no pet.) (mem. op., not designated for publication) (approving bail set at $500,000 for offense of aggravated sexual assault of child); *Ex parte Bratcher*,

9

**Ability to make bail**

The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980); *Maldonado*, 999 S.W.2d at 96. This is true even if the accused is determined to be indigent. *Charlesworth*, 600 S.W.2d at 317. If the ability to make bail in a specified amount controlled, the role of the trial court in setting bail would be unnecessary and the accused would be able to set his own bail. *Hunt*, 138 S.W.3d at 506. Moreover, this factor will not favor bail reduction when the defendant makes vague references to inability to make bail without detailing his specific assets and financial resources. *See Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

In this case, Moore's mother testified that Moore "has no income" and "stays at home" while his wife works. However, no testimony was presented regarding any other assets or financial resources that Moore may have.[8] Additionally, Moore's wife works as a nurse, but no testimony was elicited regarding the amount of her income or whether she had any other assets and financial resources. Nor was any specific testimony elicited as to the financial resources of

---

Nos. 05-05-00634-CR & 05-05-00635-CR, 2005 Tex. App. LEXIS 5418, at *1, 14 (Tex. App.—Dallas July 13, 2005, no pet.) (mem. op., not designated for publication) (approving bail set at $500,000 each for two cases involving offense of aggravated sexual assault of child); *Ex parte Ochoa*, Nos. 01-04-00238-CR, 01-04-00239-CR & 01-04-00240-CR, 2004 Tex. App. LEXIS 5817, at *1, 9-10 (Tex. App.—Houston [1st Dist.] July 1, 2004, pet. ref'd) (mem. op., not designated for publication) (approving bail set at total of $300,000 for three cases involving offense of indecency with child). The charged offense in this case alleges nine separate acts of sexual abuse, which makes this case comparable to the above cases in which multiple sex offenses were alleged.

[8] We find it significant that counsel argued that Moore was going to "pay for an apartment here in Texas," which suggests that he has some source of funds, whether from his wife, family, or elsewhere.

Moore's mother or other family members, who apparently "have a place in Arkansas" where Moore can stay in addition to their home in Indiana. We also observe that Moore's grandmother was able to make 10% of the original bond of $150,000, but no evidence was presented as to why she could post that amount but not 10% of the current bond amount. On such a bare record, we cannot say that the district court would have abused its discretion in finding that this factor did not favor a reduction in bail.

**Sufficient bail to assure appearance but not oppress**

The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear as required. *Charlesworth*, 600 S.W.2d at 317. However, while bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). This occurs when the trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial or appeal. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (per curiam).

In claiming that the amount of bail in this case was oppressively high, Moore cites to four unpublished opinions from this Court in which the Court either reduced the amount of bond or affirmed the trial court's order setting bond in an amount less than what has been set here. *See Ex parte Muller*, No. 03-11-00163-CR, 2011 Tex. App. LEXIS 6664 (Tex. App.—Austin Aug. 18, 2011, no pet.) (mem. op., not designated for publication) (affirming bond set at $250,000 for

11

offenses of aggravated sexual assault of child and indecency with child by contact); *Ex parte Rean*, No. 03-09-00032-CR, 2009 Tex. App. LEXIS 7175 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op., not designated for publication) (affirming bond set at $250,000 for offense of sexual assault); *Ex parte Bell*, No. 03-09-00037-CR, 2009 Tex. App. LEXIS 3389 (Tex. App.—Austin May 12, 2009, no pet.) (mem. op., not designated for publication) (affirming trial court's reduction of bond from $300,000 to $100,000 for third-degree felony offense of injury to child); *Ex parte Chachere*, No. 03-01-00404-CR, 2002 Tex. App. LEXIS 453 (Tex. App.—Austin Jan. 25, 2002, no pet.) (op., not designated for publication) (reversing trial court order setting bond at $700,000 and reducing it to $250,000 in capital murder case). But as this Court has observed in the past, "'Case law is of relatively little value in addressing the ultimate question of the appropriate amount of bail in a particular case' because appellate decisions on bail matters are often brief and avoid extended discussions, and because the 'cases are so individualized that generalization from results reached in others is difficult.'"[9] *Beard*, 92 S.W.3d at 571 (citing 41 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 16.51 (2d ed. 2001)). Although the bond in this case is higher than the bond found to be acceptable in those other cases, the district court would not have abused its discretion in finding that the higher amount in this case was justified by the particular nature and circumstances of this offense.

---

[9] We note that in addition to factual differences between the cited cases and this case, in three of the four cited cases, this Court affirmed the trial court's order. Here, Moore is asking us to reverse the trial court's order. That is a significant procedural distinction. In the one cited case in which this Court reversed the trial court's order, there was evidence presented that the applicant had longstanding ties to the community, had parents and a sister who lived in Texas, and had a stable employment history, having "held the same job for fifteen years." *See Ex parte Chachere*, No. 03-01-00404-CR, 2002 Tex. App. LEXIS 453, at *10-11 (Tex. App.—Austin Jan. 25, 2002, no pet.) (op., not designated for publication). No similar evidence was presented in this case.

Moreover, this is not a case in which the record indicates that the district court refused to reduce the bail amount "for the express purpose of forcing appellant to remain incarcerated" pending trial. *Cf. Harris*, 733 S.W.2d at 714 (appeals court found abuse of discretion where trial judge stated, "I'd rather see him in jail than to see someone's life taken. . . ."). Here, the district court made no statement suggesting that it was refusing to reduce the bond amount for the express purpose of keeping Moore incarcerated, and we will not infer otherwise on a silent record. *See Milner v. State*, 263 S.W.3d at 149; *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.); *Ex parte Milburn*, 8 S.W.3d 422, 426 (Tex. App.—Amarillo 1999, no pet.).

**Future safety of the victim and the community**

This factor is difficult to analyze on the record before us because the arguments on this point appear to be based primarily on evidence that was presented at the prior hearing. At the habeas hearing, the State asserted that Moore's daughters are under the influence of his wife, who, according to the State, is "non-protective" and on Moore's "side." Counsel responded that Moore's daughters are no longer under the wife's control because they are living in Indiana. In Moore's view, the fact that the alleged victim and her younger sister are not living in Texas makes him less of a threat to them. Moore also asserts that there are conditions of his prior release on bond (such as no communication with the victim) that, if applied to his current bond, would ensure the safety of the victim.[10] However, the district court could have reasonably inferred that such conditions would not guarantee the victim's safety in this case. Moore's mother testified that the alleged victim called

---

[10] A copy of the conditions of Moore's release on his original bond was attached to his brief. However, a copy of these conditions do not appear in the record. Nor does the record contain any conditions of release for Moore's current bond.

13

Moore "a couple of times but [Moore] did not answer." Additionally, it is undisputed that Moore's family lives in Indiana, that his daughters are currently residing there with the sister of Moore's wife, and that Moore, during his prior release, traveled to Indiana to be with his family.[11] Thus, the district court could have reasonably inferred that even if Moore himself does not contact the victim, contact could nevertheless occur if the victim continues to call Moore or if Moore again travels to Indiana.

**Other factors**

Moore argued during the hearing that he had complied with his previous bond conditions, but this was disputed by the State. It was undisputed, however, that on both occasions when an arrest warrant was issued for Moore, he voluntarily turned himself into authorities.

No evidence was presented regarding Moore's work history, criminal history, or his length of residency in Texas. On the other hand, there was evidence presented tending to show that Moore might be a flight risk. Moore's mother testified that although Moore was willing to stay in Texas, "if need be," she would "love to have him home in Indiana" and that there was also a "place in Arkansas" where he could stay. Moore's mother also agreed with the prosecutor that Moore does not have any family in Texas except for his wife. This is the same wife who, according to the testimony of Moore's mother, has been charged with evidence tampering in this case. And, because he does not work, Moore has no employment ties to Texas.

In summary, although some of the above factors might support a reduction in bond, others do not. The burden is on the habeas applicant to prove that bond is excessive, and the

---

[11] There was apparently no condition on Moore's prior release that he remain in Texas.

district court would not have abused its discretion in finding that Moore failed to satisfy that burden. The record reflects that Moore is facing very serious charges with a possible sentence of life imprisonment if convicted, that he has no connections to Texas other than a wife who has been charged with evidence tampering in this case, that he has family in Indiana where the alleged victim and Moore's younger daughter currently reside and where his mother wants him to live pending trial, and that the alleged victim had attempted to contact him during his prior release. Additionally, the amount of bond is comparable to bond amounts approved in similar cases, and the record is vague regarding the assets and financial resources of Moore, his wife, and other members of his family. On such a record, we cannot conclude that the district court abused its discretion in declining to reduce the bond amount. We overrule Moore's sole issue.[12]

## CONCLUSION

We affirm the order of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: June 8, 2012

Do Not Publish

---

[12] We note that in response to what it perceived as inadequate briefing, the State has filed a motion to strike appellant's brief. Having found nothing in appellant's brief that warrants such a remedy, we deny the motion. *See* Tex. R. App. P. 38.9.

15